**Patrick James BURKE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–95–01001–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 29, 1996.

Sheri Haussner Travers, Katy, for appellant.

Fred Stuart Wilson, Houston, for appellee.

Before LEE, HUDSON and EDELMAN, JJ.

## OPINION

LEE, Justice.

Appellant entered a plea of guilty before the court to the offense of driving while intoxicated. TEX.REV.CIV. STAT. ANN. art. 6701l–1(b) (Vernon Supp.1994), *repealed by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.15, Tex. Gen. Law 3589, 3704 (current version at TEX. PENAL CODE ANN. § 49.04 (Vernon 1994)). He was convicted and the court assessed punishment at probation for five years and a fine of $800. Approximately

a year later, the state moved to revoke appellant's probation. After a hearing, the trial court revoked appellant's probation and assessed punishment at five years imprisonment. In three points of error, appellant contends that the evidence was insufficient to support the revocation of his probation, and complains of the admission of evidence and that the trial court failed to consider the full range of punishment during the revocation hearing. We affirm.

In his first point of error, appellant argues that the evidence was insufficient to support the revocation of probation. The state moved to revoke appellant's probation because he had not refrained from committing another offense. The state alleged that on March 25, 1995, appellant operated a motor vehicle while intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 1994).

A proceeding to revoke probation is not criminal or civil, but rather an administrative proceeding. However, the rules of criminal evidence and procedure are generally applicable. *Cobb v. State,* 851 S.W.2d 871, 873 (Tex.Crim.App.1993); *Stevens v. State,* 900 S.W.2d 348, 351 (Tex.App.—Texarkana 1995, pet. ref'd). In a probation revocation hearing, the state must prove by a preponderance of the evidence that the defendant violated a condition of his probation. *Cobb,* 851 S.W.2d at 873; *Stevens,* 900 S.W.2d at 351. Proof of a single violation is sufficient to support a revocation. *Stevens,* 900 S.W.2d at 350.

Our review of the evidence is limited to determining whether the trial court abused its discretion in revoking the defendant's probation. *Barnett v. State,* 615 S.W.2d 220, 222 (Tex.Crim.App. [Panel Op.] ), *appeal dismissed,* 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981); *Stevens,* 900 S.W.2d at 351. In conducting this review, we are to view the evidence in the light most favorable to the trial court's order. The trial court is the exclusive judge of the credibility of the witnesses and determines if the allegations in the motion to revoke are sufficiently demonstrated. *Galvan v. State,* 846 S.W.2d 161, 162 (Tex.App.—Houston [1st Dist.] 1993, no pet.).

■ As a threshold matter, we must determine if the state was required to prove a culpable mental state to support a driving while intoxicated offense. In an unclear footnote in his appellate brief, appellant appears to argue that the state is required to prove a mental state to obtain a driving while intoxicated conviction. This argument stems from the fact that driving while intoxicated was moved from the revised civil statutes to the penal code during the 1993 legislative session. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.18(b), 1993 Tex. Gen. Laws 3586, 3705. The penal code provides that a mental state is required "unless the definition [of the offense] plainly dispenses with any mental element." TEX. PENAL CODE ANN. § 6.02(b) (Vernon 1994). The penal code also provides that if no mental state is indicated in the definition of an offense and one is required under section 6.02(b), "intent, knowledge, or recklessness suffices to establish criminal responsibility." *Id.* § 6.02(c). Thus, appellant contends that the state was required to prove "recklessness" in order to sustain the conviction.

The argument that the state is required to prove a culpable mental state to obtain a driving while intoxicated conviction was rejected by the Amarillo Court of Appeals in *Reed v. State,* 916 S.W.2d 591 (Tex.App.—Amarillo 1996, pet. ref'd.). This panel followed the Amarillo court's decision in another case also decided today. *See Aguirre v. State,* 928 S.W.2d 759 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.); *see also Honeycutt v. State,* 627 S.W.2d 417, 424 n. 4 (Tex.Crim. App.1981); *Joiner v. State,* 161 Tex.Crim. 526, 279 S.W.2d 333, 334 (1955). Therefore, the state was only required to prove that appellant was driving a motor vehicle in a public place while intoxicated without proving a culpable mental state. *See* TEX. PENAL CODE ANN. § 49.04 (Vernon 1994).

■ A witness testified that she noticed appellant slowly driving a red pick-up truck with a trash can lodged under it. The truck initially passed by her house and went around the block. The truck eventually came to rest in the street near her house. She noticed that appellant was slumped over the steering wheel and the truck was still running. She contacted the police and an officer responded within a few minutes.

When the officer arrived, appellant was still slumped over the steering wheel. The officer turned off the truck's ignition and woke appellant up. He then guided appellant to his patrol car and placed him in the back seat. He testified that he smelled alcohol on his breath and that appellant stumbled as he walked. The officer testified that he searched the truck and found a three-quarter empty bottle of vodka. The officer took appellant to the police station where appellant refused to take a breathalyzer test. Also while at the police station, appellant was videotaped.

The officer admitted that he did not perform any field sobriety tests, but opined that based on his observations, appellant was intoxicated from either "alcohol or beer" when he placed him under arrest. The officer claimed that he did not perform field sobriety tests because he was afraid that appellant would injure himself because he was severely intoxicated. During cross-examination, the police officer also admitted that he had not mentioned in his offense report either the three-quarters empty vodka bottle found in the truck or the trash can being lodged under the truck.

Contrary to the state's evidence, appellant testified that he was not intoxicated, but rather drowsy from taking cold and flu medication. Appellant testified that he took the medicine in the early afternoon, about two hours before he was arrested. He went to visit a friend, but his friend was not home. While still in his friend's neighborhood, he became so tired from the medication that he pulled to the side of the road to sleep. He further testified that there was not a vodka bottle in his truck. He admitted to being a recovering alcoholic, but denied that he had been drinking on the day of the incident. In fact, at trial, he claimed to not have had a drink in over a year.

Appellant contends that the evidence is insufficient because the state failed to "show whether appellant ingested an alcoholic beverage or seemed intoxicated [because he took] too much cold medicine." When the

evidence is viewed in the light most favorable to the trial court's finding, the record reveals that appellant was seen driving his truck in an erratic manner shortly before he stopped. The police officer who responded to the call found appellant asleep and slumped over the steering wheel of the truck. The officer also found a three-quarters empty bottle of vodka in the truck, appellant staggered when he attempted to walk and he smelled of alcohol. The trial court heard this testimony and had an opportunity to determine the weight and credibility of the various witnesses' testimony. The trial court was within its discretion when it determined to revoke appellant's probation because he was driving while intoxicated. We overrule appellant's first point of error.

 In his second point of error, appellant contends that the trial court did not consider the full range of punishment. It is a denial of due process for a trial court to *arbitrarily* refuse to consider the entire range of punishment, *McClenan v. State,* 661 S.W.2d 108, 110 (Tex.Crim.App.1983), or refuse to consider mitigating evidence and impose a predetermined punishment. *Howard v. State,* 830 S.W.2d 785, 787 (Tex.App.—San Antonio 1992, pet. ref'd); *Jefferson v. State,* 803 S.W.2d 470, 471 (Tex.App.—Dallas 1991, pet. ref'd); *Cole v. State,* 757 S.W.2d 864, 865 (Tex.App.—Texarkana 1988, pet. ref'd).

Appellant complains that the following statements made by the trial court during his original plea hearing indicate that the trial court had a predisposition to impose the maximum sentence:

1. If you want to run with the same friends and live the same life, you want to keep drinking, you're going to end up in the penitentiary. Do you understand that?

2. Is there any doubt in your mind if you don't follow [the terms of your probation] you're going to end up back in jail?

Appellant relies on *Jefferson, Cole,* and *Howard* in support of his argument. In each of those cases the trial judge essentially promised the defendant that if he did not comply with the terms of his probation, he would be sentenced to a particular number of years in prison. *Howard,* 830 S.W.2d at 787; *Jefferson,* 803 S.W.2d at 471–72 (holding that trial court procedure of recording the length of a sentence in the probation officer's records *at the conclusion of the plea hearing,* violated the defendant's due process right to have the entire punishment range considered at the subsequent probation revocation hearing because the trial court had predetermined the punishment period); *Cole,* 757 S.W.2d at 865–66 (trial court wrote on the docket sheet that the defendant would receive seventy-five years imprisonment if he violated the terms of his deferred adjudication); *see also McClenan,* 661 S.W.2d at 110.

In *Howard,* for example, the trial judge told the defendant at a deferred adjudication hearing that burglary of a habitation is "the worst thing there is." He also said, "as far as I'm concerned, you can go to TDC for ninety-nine (99) years and stay there, do you understand that?" The trial court placed the defendant on deferred adjudication, told him the range of punishment was five to ninety-nine (99) years or life in prison, and warned him that if he violated the terms of his deferred adjudication, "the chances are very good that you'll get 99 years and a $10,000 fine." At the subsequent hearing to adjudicate guilt, the court stated, "the only reason I gave him five years originally is because that was the plea bargain agreement." The court then sentenced the defendant to ninety-nine (99) years in prison. *Howard,* 830 S.W.2d at 787.

The San Antonio Court of Appeals determined that the trial court's actions indicated that he did not consider the full range of punishment. Several mitigating factors were presented by the defendant which indicated that his violations were not severe, including testimony by his probation officer that the defendant should be sent to "boot camp" for discipline. The court determined that the procedure employed by the trial court denied the defendant due process because:

1. it effectively excluded evidence relevant to punishment, specifically, the evidence of appellant's rehabilitation while on probation;

2. it precluded the judge from considering the full range of punishment prescribed by law; and

3. it deprived the defendant of a fair and impartial tribunal at the punishment hearing.

*Id.* at 788 (quoting *Fielding v. State,* 719 S.W.2d 361, 368 (Tex.App.—Dallas 1986, pet. ref'd) (Guitard, C.J., dissenting)).

There is nothing in the record before us which indicates that appellant was similarly denied due process. It is clear from the entire record of his original plea hearing that the trial court was attempting to impress upon appellant that his probation was a serious matter and the conditions should be followed closely. Unlike the trial judge in *Howard, Cole* and *Jefferson,* the trial court did not promise or threaten appellant with a specific sentence if he violated the terms of his deferred adjudication. There is no indication that the trial judge refused to consider all of the evidence presented and imposed a threatened sentence in order to maintain credibility. Rather, the record reflects that it considered all of the evidence presented and determined that five years was an appropriate punishment for a third driving while intoxicated conviction which is punishable by two to ten years imprisonment. *See* Tex. Penal Code Ann. §§ 12.34, 49.09 (Vernon 1994). We overrule appellant second point of error.

Next, appellant complains that the trial court erred in admitting the videotape of appellant. Without authority or reference to the record, appellant contends that the videotape gave the trial court a prejudicial view of what occurred because the tape contained video only and not audio. Appellant's entire argument in support of this point of error is:

Appellant might not have exhibited the "slurred speech" characteristic of DWI suspects, but this would not have been apparent on a tape with no sound. Thus, there was not before the court certain evidence (such as the lack of slurred speech) that would have made appellant's violation less likely or clear.

In addition, the videotape is not part of the appellate record nor does the record indicate that appellant requested for the tape to be included in the record.

The state supported its offer of the videotape as an exhibit with the testimony of Officer Edwin Sanders. Sanders testified that the videotape fairly and accurately depicted the events which occurred once appellant arrived at the station. He admitted that the videotape did not have any audio on it, but stated that the recording had not been altered in any manner. On voir dire by defense counsel, the officer admitted that the equipment used was capable of making an audio recording, but that it did not work in this particular instance. The voir dire examination consisted of the following:

Q. Officer Sanders, are you the video officer on this tape?

A. Yes, sir.

Q. Isn't the video room over there equipped with audio equipment?

A. Yes, sir.

Q. You're telling the court that the audio did not work?

A. That's correct.

The record does not contain any additional discussion of the videotape or any indication why the tape did not include an audio recording of the events.

At the conclusion of the voir dire examination, the trial court overruled appellant's objection to the videotape subject to viewing the tape. The trial court viewed the tape at the end of the hearing and appellant renewed his objection that the tape was prejudicial because it did not include audio. The trial court again overruled appellant's objection.

Whether evidence is admissible is a matter that is within the trial court's discretion and we will only reverse upon a showing of an abuse of that discretion. Tex. R.Crim. Evid. 104; *McVickers v. State,* 874 S.W.2d 662, 664 (Tex.Crim.App.1993); *De La Garza v. State,* 898 S.W.2d 376, 378 (Tex. App.—San Antonio 1995, no pet.); *Rodriguez v. State,* 896 S.W.2d 203, 205 (Tex.App.— Corpus Christi 1994, no pet.). The visual portion of a videotape is admissible if the predicate for the introduction of a photograph is met. *Huffman v. State,* 746 S.W.2d 212, 222 (Tex.Crim.App.1988); *see also* Tex.

R.Crim. Evid. 901; *Kephart v. State,* 875 S.W.2d 319, 322 (Tex.Crim.App.1994). In addition, the video portion of a videotape of a defendant's sobriety tests is not testimonial in nature and its admission does not violate a defendant's federal or state right against self-incrimination. *Miffleton v. State,* 777 S.W.2d 76, 80–81 (Tex.Crim.App.1989).

Because of the brevity of appellant's argument and the fact that he did not support his argument with authority or reference to the record, it is difficult to determine the nature of his argument. However, he appears to be contending that the state should not have been allowed to use the videotape as evidence because the audio portion of the tape *might have* contained exculpatory evidence.

■■■ Loss or destruction of exculpatory evidence can result in a denial of due process. Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the state is obligated to disclose to a defendant favorable evidence that is material to guilt or punishment. *See California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). A duty to preserve evidence, however, is limited to evidence that might be expected to play a significant role in the suspect's defense. *Id.* at 488, 104 S.Ct. at 2533–34. The "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* at 489, 104 S.Ct. at 2534; *accord, Lee v. State,* 893 S.W.2d 80, 86 (Tex.App.—El Paso 1994, no pet.); *McDonald v. State,* 863 S.W.2d 541, 543 (Tex.App.—Houston [1st Dist.] 1993, no pet.).

■■■ Three factors which have been deemed relevant in determining whether the loss of evidence violates a defendant's right to due process are:

1. the level of *government culpability.*

2. the likelihood that the lost evidence was exculpatory; and

3. the likelihood that the defendant was significantly prejudiced at trial by the absence of the evidence.

*Davis v. State,* 831 S.W.2d 426, 442 (Tex. App.—Austin 1992, pet. ref'd).[1] Unless the defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not, in and of itself, result in denial of due process. *Id.; Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988). The defendant's due process is only implicated "in those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337; *see also California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

■■■ In the current case, there is no indication that the police or the state acted in bad faith. Appellant had an opportunity during trial to develop why the audio was not recorded, but did not avail himself of that opportunity. All the evidence in the record indicates that, for whatever reason, the audio was not recorded. There is no indication that the government was in anyway culpable.

The second factor to be considered is the likelihood that the audio portion of the videotape was exculpatory. Appellant effectively argues that the tape *might have* demonstrated that his speech was not slurred. Appellant's naked assertion is insufficient to indicate whether an audio recording of the events would have been exculpatory. The trial court had an opportunity to hear the arresting officer's testimony that appellant's speech was slurred and it viewed the video portion of the recording so that it could compare the recording with the officer's testimony. The record contains nothing that indicates that an audio recording would have been exculpatory.

Finally, it is difficult to assess whether appellant was significantly prejudiced by the audio not being recorded because the videotape is not part of the appellate record. However, the trial court had an opportunity

---

1. Other courts have placed an affirmative obligation on the defendant to demonstrate that 1) the state acted in bad faith; 2) the evidence was material; and 3) the evidence was favorable. *See Lee,* 893 S.W.2d at 86; *McDonald,* 863 S.W.2d at 543.

to view the tape and hear the testimony presented at trial.

Taking all the factors into consideration and reviewing the entire record, we cannot say that appellant was deprived of a fair trial. *Cf. Davis,* 831 S.W.2d at 442. Appellant's third point of error is overruled and the judgment of the trial court is affirmed.