# NO. 12-95-00127-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| RAUL RAMOS, JR.,<br>APPELLANT | § | APPEAL FROM THE SEVENTH |
| V. | § | JUDICIAL DISTRICT COURT OF |
| THE STATE OF TEXAS,<br>APPELLEE | § | SMITH COUNTY, TEXAS |

---

## PER CURIAM

Appellant, Raul "Billy" Ramos, Jr., appeals his conviction for the offense of murder. He was convicted by a jury for the murder of Carlos Garcia ("Garcia"). The jury assessed punishment at 99 years' confinement and a $10,000 fine. Appellant raises three points of error on appeal. We will affirm.

### FACTS

The evidence adduced at trial shows that Garcia was found dead on the morning of October 17, 1994, in Wilks Park in Tyler, Texas. Garcia was a member of the Tyler Nortenos, a Hispanic gang whose leader was the Appellant. The record reflected that there had been recent internal conflicts and divisiveness among members of the gang. Appellant had testified at the trial of a juvenile accused of an unrelated murder ("the Grady murder") and had testified against a fellow member of the Nortenos. This had caused hostility among the gang's members, much of it directed toward Appellant. There was also extensive testimony regarding a nine millimeter gun that was

1

1409

allegedly used in the Grady murder, and there were claims at Appellant's trial that possession of that gun was a tense issue between Appellant and Garcia. Appellant's own testimony established that a nine millimeter gun "belonged to the gang" and was used by various Nortenos.

On October 16, 1994, the evening of the murder, Appellant went to the home of Garcia's girlfriend, Ida Sanchez ("Sanchez"), three times, demanding to see Garcia and inquiring about the gun. Sanchez testified that she told Appellant each time that the gun had been there but was no longer in the house, and that Garcia was not home but was out with Appellant's brother Roman "Moosie" Ramos Leal ("Moosie"). She testified that she feared for Garcia after Appellant left.

Later in the evening of October 16, 1994, Appellant was with fellow gang members Cirenio Medrano ("Medrano"), Felipe or Phillip Barrera ("Barrera"), "Moosie," and Garcia at Wilks Park. Both Moosie and Medrano confirmed that they were present at Wilks Park with Appellant that night. They each testified that Appellant demanded the nine millimeter gun from Garcia and became hostile with Garcia when he failed to produce it. Appellant then pulled a shotgun on Garcia and shot him. Both Medrano and Moosie testified that they saw Appellant shoot Garcia "at least twice." They stated that Garcia attempted to run after the initial shot and that, at Barrera's urging, Appellant pursued Garcia through the park and shot him again as he attempted to run away. After the shooting, the men fled the scene. Medrano stated that they drove back to the house where Appellant was staying with his sister, Esther "Nena" Leal, and Maria Alvarez.

Alvarez testified as a hostile witness. She confirmed that, at the time of Garcia's murder, Appellant had been staying at the same house with Leal and her. She stated that Appellant came home with Medrano and Moosie on the night of the murder, and that all three of the men told her that Appellant had killed Garcia. She also testified that Appellant left Tyler in Leal's car the day after Garcia's body was found and drove to California. She admitted that she was afraid to come back from Minnesota to testify because she was afraid of Appellant.

Officer John Brown, a Tyler police officer, testified as to a previous sworn statement given by Alvarez, in which she had also stated that Leal told her that Appellant had confessed to murdering Garcia. In the statement, Alvarez recalled that Appellant had said the dispute was over the gun used in the Grady murder. She also described the shirt that Garcia was wearing the night he was killed.

Appellant's sister, Leal, also testified, stating that she and Alvarez had been subpoenaed from

2

1441

Minnesota to appear as witnesses in this case. She was established by the prosecution as a hostile witness. The State introduced a sworn statement by Leal. In the statement, Leal maintained that Appellant had come home the night of the murder "scared, said all he could hear was [Garcia] screaming, said they went to Wilks Park, that he demanded the nine millimeter from [Garcia]." Leal also told police that Appellant had said Garcia had refused to return the gun and that it was the one used in the Grady murder. According to Leal's sworn statement, Appellant told her that he shot Garcia, and that he chased him and shot him again. She also told police that "[Appellant] told me that he would kill anyone that talked about the shooting of [Garcia]." She also acknowledged that she was paid by Crimestoppers for her information and that she had believed that her identity would be kept confidential. Evidence was presented that Leal knew Appellant had taken her new car to California and did not disclose his identity to the authorities, who filed a stolen vehicle report on her behalf. At trial, Leal recanted her statement to police that Appellant had confessed to her that he had killed Garcia.

Officer Rob Hayes, a Tyler policeman working in the Gang Violent Crimes investigations division, stated that Appellant was the leader of the Nortenos gang and that they were the most violent gang in Tyler. Daniel Tiner, a former cellmate of Appellant, testified that Appellant had bragged to him about killing Garcia. He relayed many details about the alleged murder that were consistent with police reports or the testimony of other witnesses, including Appellant's dispute with Garcia about the nine millimeter gun and the other missing merchandise. Tiner also testified that Appellant had stated that he would shoot witnesses who testified against him when he was released from jail.

## LEGAL SUFFICIENCY

Because Appellant's second and third points of error challenge the legal and factual sufficiency of the evidence, we will address those points first. In Appellant's second point of error, he argues that the verdict of the jury was based upon legally insufficient evidence. In reviewing the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Geesa v. State*, 820 S.W.2d 154, 155-161 (Tex. Cr. App. 1991). After

3

reviewing all of the evidence, we will resolve all conflicts and reasonable inferences in favor of the verdict. *Shears v. State*, 895 S.W.2d 456, 458-59 (Tex. App. - Tyler 1995, no pet.). This standard is applied to both direct and circumstantial evidence cases, *Chambers v. State*, 711 S.W.2d 240, 245 (Tex. Cr. App. 1986), and places full responsibility on the trier of fact to weigh the evidence, to resolve conflicts in the testimony, and to draw reasonable inferences from basic to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. In conducting this review, the appellate court is not to re-evaluate the weight and credibility of the evidence but to act only to ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Cr. App. 1993), *cert. denied*, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). If there is evidence to establish the defendant's guilt beyond a reasonable doubt, and the jury believes the evidence, the appellate court cannot reverse the judgment on an evidence point. *Shears v. State*, 895 S.W.2d at 459, *citing Soto v. State*, 864 S.W.2d 687, 691 (Tex. App. - Houston [14th Dist.] 1993, pet. ref'd).

The essential elements of murder, as charged in the indictment, are that Appellant intentionally and knowingly caused the death of Carlos Garcia, by shooting him with a deadly weapon, and that he did intend to cause serious bodily injury to Garcia by committing an act clearly dangerous to human life that caused Garcia's death. TEX. PEN. CODE ANN. § 19.02 (b) (Vernon 1994 and Supp. 1997). Although Appellant does not specifically state which elements of murder that he challenges, it appears from his argument that he contests the proof that he was the perpetrator of the offense. Throughout the trial, Appellant sought to establish that Medrano was "the shooter" who had killed Garcia, and that Appellant was a witness rather than a participant in the shooting.

We have reviewed the evidence presented at trial and conclude that it was sufficient to allow a rational trier of fact to find that Appellant did murder Garcia as charged. Medrano and Moosie both testified that Appellant became hostile with Garcia on the night of the murder while the men were at Wilks Park. He demanded the nine millimeter gun from Garcia, who claimed that it was at Moosie's house. When Garcia could not produce the gun, Appellant shot him with a 12-gauge shotgun. Medical testimony was consistent with the eyewitness claims that, after Garcia was shot once, he ran and was shot again in the back. The men then left Garcia in the park and fled the scene. Medrano testified that they drove back to the house where Appellant was staying with his sister, Leal, and Alvarez. Leal told police that Appellant confessed that he had committed the crime.

4

Alvarez stated that the other men told her that Appellant committed the offense. Medrano testified that Appellant told him to hide the shotgun and he did so in the backyard adjacent to Appellant's backyard. The evidence established that the Appellant left Tyler within a few days of the murder and drove his sister's new car to California, where he was arrested on an outstanding warrant for Garcia's murder. After he returned, he bragged to his cellmate about committing the murder. Appellant cites contradictory testimony in his brief on appeal. However, our duty is not to act as another juror. The jury alone possesses the right to weigh testimony, resolve credibility disputes, and select the evidence it cares to believe. *Nelson v. State*, 905 S.W.2d 63, 64 (Tex. App. - Amarillo 1995, no pet.); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App. - Austin 1994, no pet.). Moreover, should inconsistent or contradictory testimony exist, we assume that the discrepancies were resolved in favor of the verdict. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Cr. App. 1988).

We conclude that the evidence is legally sufficient to support the charged offense. Appellant's second point of error is overruled.

### FACTUAL SUFFICIENCY

Appellant asserts in his third point of error that the jury's verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong, unjust and factually insufficient. In conducting a factual sufficiency review, this Court must view all the evidence impartially and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d 126, 135 (Tex. Cr. App. 1996). We must view the evidence "without the prism of 'in the light most favorable to the prosecution'... and set aside the verdict if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 129. These fact findings must be upheld if there is more than a scintilla of evidence in support as the verdict. *Pratt v. State*, 907 S.W.2d 38, 46-47 (Tex. App. - Dallas 1995, no pet.). The *Clewis* court also held, however, that a factual sufficiency review must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. *Schexnider v. State*, 943 S.W.2d 194, 201 (Tex. App. - Beaumont 1997, no pet.) *citing Clewis*, 922 S.W.2d at 133.

Our review of the record reveals that Appellant presented evidence contrary to that of the State. Several friends and family members testified that Medrano was the known possessor of the

5

1117

two weapons at issue and that he had been seen with them on numerous occasions. Medrano acknowledged having used the shotgun, claiming that he did so only once in self-defense during a drive-by shooting at Appellant's house. Christina Iglesias testified that Leal and Alvarez were not at home the night of the shooting; therefore, Appellant could not have confessed to them that he had just killed Garcia. Also, in court, Leal recanted her earlier statements and testified that she had been coerced by the police to testify as to Appellant's confession.

Witnesses who claimed to be familiar with Tiner testified that he had a poor reputation for truthfulness. Appellant's half-brother, Sammie Leal, also testified, maintaining that there was hostility between Moosie and Appellant because of Appellant's testimony in the Grady murder trial and that Moosie and Garcia were very close. Martin Rodriguez, a member of rival gang, the Eastside Locos, testified that he had seen Medrano with the nine millimeter gun. He also claimed that his brother had been shot by Medrano, although he did acknowledge on cross-examination that he had never given such a statement to the police.

Appellant also took the stand on his own behalf. He acknowledged that he was a Norteno and he testified that there had been great hostility toward him since he had testified at the Grady murder trial. He denied prior testimony that he and Garcia had stolen property and had hidden it at Sanchez's house. Appellant acknowledged having had possession of the nine millimeter gun and the shotgun in the past but denied that either weapon belonged to him. He testified that he had in fact been with the other four men at Wilks Park the night of October 16, 1994, and into the early hours of October 17, 1994. Appellant stated that he had picked up Medrano, who was walking that evening with the shotgun under his jacket, and that he drove all of the men in his car. Appellant testified that, immediately upon arriving at the park and getting out of the car, Garcia pulled the nine millimeter gun and began yelling at him for "messing up" by testifying in the Grady murder trial. Appellant stated Medrano shot Garcia with the shotgun before Garcia could shoot Appellant, and that it was Medrano who had pursued Garcia and fired additional shots. Appellant also testified that Leal was not at home when they arrived there after the shooting, thus refuting the claim that he had arrived upset immediately after the murder and confessed to committing it.

The factual sufficiency review process begins with the assumption that the evidence is legally sufficient under the *Jackson* test. *Clewis*, 922 S.W.2d at 134. The appellate court then considers

6

all of the evidence in the record related to appellant's sufficiency challenge, not just the evidence which supports the verdict. The appellate court reviews the evidence weighed by the jury which tends to prove the existence of the elemental fact in dispute, and compares it to the evidence which tends to disprove that fact. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Cr. App. 1996).

However, a factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Clewis*, 922 S.W.2d at 133. Although Appellant presents evidence showing that he did not shoot the victim, there exists other probative evidence that he did. Due deference must be accorded to the jury regarding the weight and credibility of the evidence. *Id.* We conclude that the jury's verdict is not manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Id.* at 135. Therefore, we hold that the jury's finding that Appellant intentionally killed Garcia is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Id.* Point of error three is overruled.

## EXCLUSION OF EVIDENCE

In point one, Appellant contends that the trial court committed reversible error in excluding evidence that Medrano, a key prosecution witness, had threatened Alvarez and had coerced her to testify against Appellant. The question of admissibility of evidence shall be determined by the trial court and, absent a clear abuse of discretion, the trial court's ruling will not be disturbed on appeal. *See* TEX. R. CRIM. EVID. 104(a); *Burke v. State*, 930 S.W.2d 230, 235 (Tex. App. - Houston [14 Dist.] 1996, pet. ref'd.).

On Friday, May 12, 1995, the State called Maria Alvarez to the stand as a hostile witness. Our review of the record reveals that Alvarez was extremely uncooperative with the prosecutor and demanded an interpreter. However, she basically understood and accommodated defense counsel each time she was cross-examined. She nevertheless did provide testimony which was not favorable to Appellant.

On Monday, May 15, 1995, the State rested and the defense began its case. Alvarez was called unexpectedly to the stand by Appellant's counsel, where she testified before the jury that Medrano had threatened her that morning. As a State's witness, Medrano had already testified that Appellant had murdered the decedent, while Appellant sought to show that Medrano was the actual

7

murderer.

The State objected to Alvarez's testimony on the grounds of relevance and hearsay. Appellant's counsel responded that the defense was placing Medrano's character into issue, as to "whether or not he was truthful, whether or not he had that gun, whether or not he killed this Carlos Garcia. That is relevant to whether or not he is capable, whether or not he has done it before, and whether or not, quite frankly, he will do it again to this witness."

Outside the jury's presence, the court allowed the parties to question first Alvarez, then Medrano, regarding the issue of the alleged threat. Medrano denied making any such remarks. The court then returned to the issue of whether Alvarez's testimony regarding Medrano should be admitted. The State requested a motion to strike the testimony and asked for an instruction to the jury to disregard it. Appellant's counsel asserted that, "The fact that he is willing to intimidate a witness in the hall or threaten to kill anyone is highly relevant as to whether or not he acted at that time as a shooter. So we would submit that the instruction is not -- should not be granted, that the jury should be able to consider it for the defensive theory that we're going to urge." The State then reiterated its prior motion in limine regarding the suppression of prior bad acts of the State's witnesses, which had been granted by the court. The court advised Appellant's counsel that any other questions that would violate the motion in limine could result in a finding of contempt of court. It ordered Appellant's counsel to get prior ruling by the court, outside the hearing of the jury, before presenting any other improper testimony. The court then ruled that it would grant the State's request and instruct the jury to disregard Alvarez's testimony.

Appellant now urges this Court to hold that the trial court committed reversible error by excluding Alvarez's testimony, and that it deprived Appellant of his due process rights under both the federal and state constitutions. Appellant relies upon the holding in *Coleman v. State*, 545 S.W.2d 831(Tex. Cr. App. 1977), in which the court discusses the motives of a prosecution witness who testified against the defendant. The *Coleman* court held a defendant must be given great latitude to show any fact that would tend to establish ill feeling, bias, motive, or animus on the part of a witness testifying against him. *See Coleman*, 545 S.W.2d at 833; *Gonzales v. State*, 929 S.W.2d 546 (Tex. App. - Austin 1996, pet. ref'd). The court should allow "... legitimate exploration of those matters indicating the friendship or leaning of witnesses, and those associated with them,

8

1423

toward any party or issue involved." *Coleman*, 545 S.W.2d at 833-34. Any fact tending to show bias or motive, which might even remotely tend to affect a witness's credibility, should be admitted. See *Coleman*, 545 S.W.2d at 834.

Rule 612(b) of the Texas Rules of Criminal Evidence recognizes the right to impeach a witness by proof of circumstances showing bias or interest on the part of the witness. The impeaching party, however, must show that the witness's attitude is such that he is likely to favor or disfavor a particular litigant for reasons unrelated to the merits of the case. *Gonzalez v. State*, 929 S.W.2d at 549. In the present case, Appellant attempted to introduce Alvarez's testimony to show Medrano's bias against him, suggesting that the bias and ill will stemmed from the fact that Appellant was trying to show that Medrano was the shooter. Since the evidence would tend to affect Medrano's credibility as a witness, the evidence was admissible pursuant to Rule 612(b).

In further support of his arguments of admissibility, Appellant cites *Lape v. State*, 893 S.W.2d 949 (Tex. App. - Houston [14th Dist.] 1994, pet. ref'd), and argues that testimony regarding Medrano's threat is admissible under TEX. R. CRIM. EVID. 803(3) as an exception to the hearsay rule.[1] However, Appellant failed to offer this argument to the trial court in defense of the testimony, either before or after the trial court's ruling. Appellant must object or offer argument in response to the State's objection to preserve error for appellate review when the trial court excludes evidence. *Johnson v. State*, 629 S.W.2d 731, 733-35 (Tex. Cr. App. 1981); *Johnson v. State*, 925 S.W.2d 745, 750 (Tex. App. - Fort Worth 1996, pet. ref'd).

The rules of appellate procedure require that a party present its evidence and all arguments in support thereof to the trial court to allow it an opportunity to make a ruling. See TEX.R.APP.P. 52(a). "Failing to present a particular argument to the trial court and then making such argument to the appellate court in effect usurps the trial court's function of ruling on such arguments." *Johnson*, 925 S.W.2d at 750, *citing Cruse v. State*, 882 S.W.2d 50, 52 (Tex. App. - Houston [14th Dist.] 1994, no pet.). Accordingly, we conclude that Appellant has failed to preserve this contention for our review.

---

[1] Rule 803(3) provides that: [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

9

However, even if we accept Appellant's contention that the evidence was admissible to show bias and hold that the trial court erred in excluding Alvarez's testimony, reversal would not be required because any perceived error would be harmless beyond a reasonable doubt. TEX. R. APP. P. 81(b)(2) mandates that the appellate court focus upon the error and determine whether it contributed to the conviction or the punishment. *Harris v. State*, 790 S.W.2d 568, 585 (Tex. Cr. App. 1989). We must determine, beyond a reasonable doubt, whether the error made no contribution to the conviction or the punishment. *Perez v. State*, 824 S.W.2d 565, 568 (Tex. Cr. App. 1992). An error is harmless if it did not interfere with the integrity of the trial process sufficiently to affect the outcome of the trial. *Burks v. State*, 876 S.W.2d 877, 905 (Tex. Cr. App. 1994); *Perez*, 824 S.W.2d at 568.

In the present case, the exclusion of evidence showing Medrano's bias against Appellant would be harmless since the court had already admitted extensive evidence of their animosity. There was ample testimony that Appellant and Medrano were members of the same gang and that there had been significant in-fighting among the members recently. There was also testimony that Appellant and Medrano were at odds after Appellant's decision to testify at the Grady murder trial, and that subsequent hostilities had divided the Nortenos into adversarial factions.

In addition, there was abundant evidence supporting the jury's finding of guilt in this case. Numerous witnesses testified that they had either seen Appellant commit the murder or had heard him confess to it afterwards. The evidence also showed that Appellant fled the state days after the offense. Such flight is a circumstance of guilt. *Rumbaugh v. State*, 629 S.W.2d 747 (Tex. Cr. App. 1982). Finally, upon his return, Appellant bragged about the commission of the offense to his cellmate. Thus, even if Medrano's purported threat to Alvarez might have been admissible to show bias, its exclusion constituted harmless error. We conclude beyond a reasonable doubt that the exclusion of this evidence made no contribution to the conviction or the punishment and that no harm occurred. Appellant's first point of error is overruled. The judgment of the trial court is affirmed.

Opinion delivered August 29, 1997.
*Panel consisted of Ramey, Jr., C.J., Holcomb, J., and Hadden, J.*

NOT PUBLISHED