# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00369-CR

**Dacious Parker, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-12-600094, HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Dacious Parker was charged with aggravated assault causing serious bodily injury. *See* Tex. Penal Code §§ 22.01(a) (stating that person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another"), .02(a), (b) (explaining that assault is aggravated assault if offender "causes serious bodily injury to another" and that offense is, in general, second-degree felony). The indictment also contained an enhancement paragraph alleging that Parker had previously been convicted of the felony offense of burglary of a habitation. *See id.* § 30.02(a) (listing elements of offense of burglary of habitation), (c)(2) (providing that offense is second-degree felony); *see also id.* § 12.42(b) (elevating permissible punishment range for second-degree felony to that of first-degree felony if defendant has been previously convicted of another felony offense). Parker pleaded guilty to the alleged offense, and the district court elected to defer his adjudication of guilt and to place him on community supervision for ten years. Several months later, the State

filed a motion to adjudicate Parker's guilt and to revoke his community supervision and alleged that Parker had violated several of the terms of his community supervision. During the revocation hearing, Parker entered a plea of not true to the allegations in the State's motion to revoke. At the hearing, the district court determined that Parker violated the terms and conditions of his community supervision, found Parker guilty of the offense of aggravated assault, and sentenced Parker to twenty years' imprisonment. *See id.* § 12.32 (listing permissible punishment range for first-degree felony). In a single issue on appeal, Parker contends that the district court violated his constitutional rights by determining before the revocation hearing that it would not consider the full range of punishment and by imposing a sentence that was much longer than the punishment that the court had previously indicated that it might impose. We will modify the district court's judgment adjudicating Parker's guilt to correct a clerical error and affirm the district court's judgment as modified.

## BACKGROUND

As set out earlier, Parker was charged with aggravated assault causing serious bodily injury. *See* Tex. Penal Code § 22.02(a), (b). During the arraignment in which Parker initially entered a plea of not guilty to the offense at issue as well as several companion offenses, the district court explained that because there was an enhancement allegation for the aggravated-assault charge, "the range of punishment that [he was] exposed to in this case is that of a first-degree felony, 5 years to 99 years or life." In a subsequent hearing in which Parker changed his mind and entered a guilty plea to the offense at issue, the district court again explained that the enhancement allegation raised the potential punishment to that of a first-degree felony with a possible punishment range of "5 years to 99 years or life." When discussing the plea, Parker's attorney informed the district court

2

that he had explained to Parker that if he messed up while on community supervision, "his exposure is up to 99 years before you or whatever judge is present at the time." When accepting his plea, the district court informed Parker "that if you get arrested for anything else [while on community supervision], I'm going to send you to the penitentiary," and Parker answered that he understood.

During the sentencing hearing, the district court again explained that due to the enhancement allegation that Parker pleaded true to, "the possible range of punishment as enhanced is a first-degree 5 years to 99 years or life," and Parker again answered that he understood. While explaining that it was deferring Parker's adjudication of guilt and placing him on community supervision for ten years, the district court warned Parker that if he failed "to follow the rules that I set on this probation and the State comes back and files a motion to proceed to an adjudication, because I've got a written plea of guilty from you and because you've orally confirmed that plea of guilty to me in court, there's sufficient evidence before me to find you guilty and sentence you to anything up to 99 years in the penitentiary." Parker answered that he understood. In the hearing, the district court discussed how the court would have initially been "willing to sentence you to three years imprisonment" and how the court was still willing to impose that sentence if Parker "would rather do that than do ten years deferred adjudication," and the court also expressed concern that Parker would not be able to comply with the terms of his community supervision. In response, Parker communicated that he understood the court's concerns but wanted to be placed on community supervision rather than be incarcerated. Furthermore, the district court emphasized that if Parker was "back in this court within the next six months and I believe that it's true that you violated the rules that I set, I'm going to give you ten years in the penitentiary. Ten. No ifs, ands or but[]s about

3

it." Shortly thereafter, Parker's attorney warned his client on the record that if he failed to comply with the terms of community supervision, the punishment range is "5 to 99 years," and Parker answered that he understood.

A few months after Parker's adjudication was deferred, the State filed a motion to revoke his community supervision and adjudicate his guilt and later filed various amended motions to revoke. In its motions, the State alleged that Parker violated various conditions of his community supervision, including by committing several subsequent felony and misdemeanor offenses. After considering the motions, the district court elected not to revoke Parker's community supervision and to continue Parker on community supervision. Several months later, the State filed another motion to revoke alleging that Parker failed to comply with the terms of his community supervision by, among other things, committing the subsequent offenses of making a terroristic threat, *see id.* § 22.07 (proscribing, in certain circumstances, conduct in which person threatens to commit offense involving violence to person or property and explaining that offense ranges from class B misdemeanor to third-degree felony), of possessing a firearm as a convicted felon, *see id.* § 46.04(a), (e) (prohibiting convicted felon from possessing firearm and stating that offense is third-degree felony), of evading arrest, *see id.* § 38.04(a), (b) (criminalizing fleeing from law-enforcement officer who is lawfully trying to arrest defendant and specifying that offense ranges from class A misdemeanor to second-degree felony), of resisting arrest, *see id.* § 38.03 (prohibiting individual from preventing law-enforcement officer from "effecting an arrest, search, or transportation of the actor or another" and listing offense level as class A misdemeanor or third-degree felony), of

4

assaulting a police officer,[1] *see id.* § 22.01(a), (b)(1) (listing elements of offense and providing that offense is third-degree felony if victim is public servant), and of attempting to assault a police officer, *see id.* § 22.01(a), (b)(1); *see also id.* § 15.01(a), (d) (governing offense of attempt and providing that offense of attempt "is one category lower than the offense attempted").

At the start of the revocation proceeding, Parker entered a plea of not true to the revocation allegations. During the hearing, the State called seven witnesses, and Parker called five witnesses to testify regarding the revocation allegations. After considering the evidence presented during the hearing, the district court determined that all of the revocation allegations were true and, accordingly, that Parker "violated the terms of [his] deferred adjudication probation," set aside the order deferring his adjudication of guilt, found him "guilty of the offense of aggravated assault," and sentenced him "to serve a term of 20 years in the institutional division."

**GOVERNING LAW**

The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Similarly, the Due Course of Law provision of the Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19; *see also id.* art. I, § 10 (setting out rights of accused, including right to "trial . . . by an impartial jury"); *Perez-Ayala v. State*, No. 01-14-00419-CR, 2015 WL 1825869, at *2 (Tex. App.—Houston [1st Dist.] Apr. 21, 2015, no

---

[1] In its motion to revoke, the State alleged that Parker had assaulted another police officer, but the State abandoned that claim during the revocation hearing.

pet.) (mem. op., not designated for publication) (considering due-process and due-course-of-law challenges together when issues were briefed together). Due Process guarantees that a criminal defendant has the right to a hearing before a detached and neutral judge. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *see also Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997) (explaining that due process minimally "requires a 'fair trial in a fair tribunal'" (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975))); *Villareal v. State*, 348 S.W.3d 365, 372 (Tex. App.—Austin 2011, pet. ref'd) (stating that due process guarantees right to fair trial in fair tribunal). "A court's arbitrary refusal to consider the entire range of punishment is a denial of due process." *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014). "And despite a judge's wide discretion in determining the proper punishment in a revocation hearing, due process requires the right to a hearing before a neutral and detached hearing body." *Id.* "Absent a clear showing of bias," however, "a trial court's actions will be presumed to have been correct." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). A trial court's statement attempting to demonstrate the seriousness of the need for compliance with the terms and conditions of community supervision, without more, does not constitute a due-process violation. *See Burke v. State*, 930 S.W.2d 230, 235 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Moreover, in the absence of other indications in the record showing prejudgment on behalf of the trial court, an admonition that the court "would impose the maximum sentence" if the defendant violated the terms of his community supervision "does not, by itself, show prejudgment of punishment." *Ex parte Brown*, 158 S.W.3d 449, 453 (Tex. Crim. App. 2005) (per curiam). If a defendant violates the terms or conditions of his community supervision, the trial court has the authority to assess the full range of punishment. *See Cabezas v. State*, 848 S.W.2d 693,

695 (Tex. Crim. App. 1993) (explaining that uncertainty as to punishment if community supervision is revoked "is the true risk of deferred adjudication for a defendant").

**DISCUSSION**

**Due Process and Due Course of Law**

When presenting his sole issue on appeal, Parker notes that the district court ultimately sentenced him to 20 years' imprisonment, that the district court initially informed Parker that it would have sentenced him to three years' imprisonment if Parker did not want to be placed on community supervision for ten years, and that the district court stated when it placed him on community supervision that it would sentence Parker to ten years' imprisonment if he violated the terms of his community supervision. In light of the preceding, Parker urges that the district court impliedly warned Parker that it "would not consider the full range of punishment prescribed by law if it found that [Parker] violated his community supervision within six months of being placed on community supervision." Stated differently, Parker contends that the district court "violated [his] state and federal constitutional rights to due course and due process of law by . . . deciding in advance of the" revocation proceeding "that it would not consider the full range of punishment for the offense charged if it found that [he] had violated a term or condition of his community supervision." In a related argument, Parker asserts that the district court violated his due-process rights and his due-course-of-law rights by "imposing a sentence of twice the amount that it stated it would impose in the event that it found" that he "violated a term or condition of his community supervision and more than six and one-half times the sentence that it indicated it was willing to assess before it placed [him] on community supervision." In other words, Parker seems to be asserting

7

that the district court erred by prejudging the length of his incarceration and then further erred by failing to adhere to that prejudgment when rendering his punishment.[2]

When presenting this issue, Parker principally relies on *Jefferson v. State*, 803 S.W.2d 470 (Tex. App.—Dallas 1991, pet. ref'd), in which our sister court of appeals determined that a trial court violated a defendant's "due process rights by failing to consider the full range of punishment for the offense charged when he imposed a predetermined punishment period," *id.* at 472. In *Jefferson*, the trial court advised Jefferson that if he violated the terms of his community supervision, the court would give him the maximum sentence possible, which was twenty years. *Id.* at 471. Moreover, the trial court asked Jefferson's community-supervision officer to make a record of that exchange. *Id.* During a subsequent revocation proceeding, the trial court asked the community-supervision officer whether the court had promised any particular treatment if Jefferson violated the terms of community supervision, and after the community-supervision officer reminded the court that it had promised to give the maximum sentence, the trial court imposed the maximum sentence. *Id.* When determining that Jefferson's rights had been violated, the reviewing court explained that "there is no doubt" that the trial court "prejudged appellant and sentenced him in accordance with a promised punishment period" and did so in an attempt "to maintain [the court's] credibility." *Id.* at 472.

We believe that Parker's reliance on *Jefferson* is misplaced. As an initial matter, we note that, unlike the trial court in *Jefferson*, the district court did not impose the maximum possible

---

[2] In its brief, the State contends that Parker did not preserve this issue for appellate review. However, the "right to be sentenced after consideration of the entire applicable range of punishment is a category-two *Marin* right" that is not subject to procedural default. *Grado v. State*, 445 S.W.3d 736, 743 (Tex. Crim. App. 2014).

punishment when it sentenced Parker and that the court did not threaten to impose the maximum sentence if Parker violated the terms of his community supervision. In any event, as evidenced by the fact that the punishment ultimately imposed differed from that discussed during the punishment portion of the original plea hearing, the record does not reflect a "predetermined intent of the court to impose a particular sentence." *See Contreras v. State*, No. 05-15-00544-CR, 2016 WL 1628857, at *2 (Tex. App.—Dallas Apr. 22, 2016, no pet.) (mem. op., not designated for publication). On the contrary, although the district court stated in the plea hearing that it would sentence Parker to ten years' imprisonment if he violated the terms of his community supervision, the district court also explained to Parker that if he violated the terms of his community supervision, he would be subject to punishment ranging from 5 to 99 years or life imprisonment.

Moreover, "[t]he trial court conducted a full hearing on the State's Motion to Revoke Community Supervision with evidence from both sides regarding punishment." *See id.* In addition, during the revocation hearing, the district "court never referred to its earlier admonishment; instead, the record establishes the [district] court pronounced [Parker]'s sentence only after listening to all of the evidence presented during the hearing" and after the State and Parker presented closing arguments in which the State asked that Parker be sentenced to 25 years' imprisonment and in which Parker asked that he be given 3 years' imprisonment. *See Terrill v. State*, No. 04-14-00571-CR, 2015 WL 4116005, at *4 (Tex. App.—San Antonio July 8, 2015, no pet.) (mem. op., not designated for publication); *see also Brumit*, 206 S.W.3d at 645 (distinguishing *Jefferson* on grounds that trial court's statements in *Jefferson* demonstrated that trial court "had not considered a lower sentence within the range of punishment" and that trial court "did not consider any evidence when

9

imposing its sentence"). When pronouncing its judgment, the district court explained that its decision was based on its consideration of "the evidence and arguments of counsel." Further, Parker's punishment was within the range authorized by law and was "fair based on his demonstrated inability to rehabilitate while on community supervision, even after given a second chance" when the district court initially agreed to continue Parker on community supervision after the State first moved to revoke his community supervision. *See Lewis v. State*, No. 08-14-00210-CR, 2015 WL 3952871, at *4 (Tex. App.—El Paso June 26, 2015, no pet.) (not designated for publication).

Given that Parker's punishment was not assessed until after a full hearing, that both sides presented evidence during that hearing pertaining to the revocation allegations, that evidence was introduced indicating that Parker had violated the terms of his community supervision by committing several subsequent offenses, that the district court explained that its ruling was based on the evidence presented, and that the district court did not discuss in the revocation hearing its prior warning that it would send Parker to prison if he violated the terms of his community supervision, we do not believe that the district court's statements demonstrated that the district court was biased or had predetermined that it would not consider the full range of punishment before imposing its sentence. *See Brumit*, 206 S.W.3d at 645; *see also Lewis*, 2015 WL 3952871, at *1, *4 (determining that statement from trial court at prior hearing that defendant "should be going to the penitentiary today, for about ten years" did not compel determination that trial court did not consider full range of punishment because statement was made "as a means of motivating" defendant and because trial court assessed punishment after considering evidence before it that was presented during full hearing). Accordingly, we cannot conclude that the district court denied Parker due

10

process or due course of law when assessing his sentence in this case. For those same reasons, we must also conclude that the district court's decision to impose a sentence that was well within the authorized range but that was more than the amount mentioned by the district court in hearings occurring before the revocation proceeding did not deprive Parker of any due-process or due-course-of-law rights. *Cf. Alvarez v. State*, No. 03-02-00262-CR, 2003 WL 22095777, at *9 (Tex. App.—Austin Sept. 11, 2003, no pet.) (mem. op., not designated for publication) (explaining that "[p]unishment assessed within the statutory limits is generally" constitutional).

In light of the preceding, we overrule Parker's issue on appeal.

**Clerical Error**

Although Parker does not raise this on appeal, we observe that the judgment of conviction in this case contains a clerical error. The judgment in this case reflects that Parker violated the terms and conditions of his community supervision listed in the State's motion to revoke. When listing the allegations that the district court determined were true, the judgment reads, in relevant part, as follows:

> COMMITTED A SUBSEQUENT CRIMINAL OFFENSE IN THAT ON OR ABOUT THE 10TH DAY OF FEBRUARY, 2015 IN THE COUNTY OF TRAVIS, STATE OF TEXAS, DACIOUS PARKER DID THEN AND THERE INTENTIONALLY AND KNOWINGLY CAUSE BODILY INJURY TO JASON CUMMINS, AN AUSTIN POLICE OFFICER, BY STRIKING SAID OFFICER IN THE LIP WITH DEFENDANT'S HEAD AND SHOULDER.

However, the reporter's record in this case reflects that the State moved to abandon that allegation and that the district court approved the State's request. This Court has the authority to modify

11

incorrect judgments when it has the information necessary to do so.  *See* Tex. R. App. P. 43.2(b);

*Bigley v. State*, 865 S.W.2d 26, 27-28 (Tex. Crim. App. 1993).  For these reasons, we modify the

judgment adjudicating Parker's guilt to delete the finding that he committed the assault listed above.

## CONCLUSION

Having modified the judgment adjudicating Parker's guilt and having overruled

Parker's sole issue on appeal, we affirm the district court's judgment adjudicating his guilt.

_____

David Puryear, Justice

Before Justice Justices Puryear, Goodwin, and Field

Modified and, as Modified, Affirmed

Filed:   July 20, 2016

Do Not Publish

12