The STATE of Texas, Appellant,

v.

Jeffrey MORALES, Appellee.

No. 3–91–570–CR.

Court of Appeals of Texas,
Austin.

Dec. 23, 1992.

Rehearing Overruled Feb. 3, 1993.

Ken Oden, County Atty., Giselle Horton, Asst. County Atty., Austin, for appellant.

Christopher M. Gunter, Austin, for appellee.

Before POWERS, B.A. SMITH and ONION,* JJ.

---

* Before John F. Onion, Jr., Presiding Judge retired, Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003(b) (West 1988).

ONION, Justice (Retired).

This is an appeal by the State from the trial court's mid-trial order granting appellee's pretrial motion to dismiss the information and the cause with prejudice. *See* Tex.Code Crim.Proc.Ann. art. 44.01(a)(1) (West Supp.1992). Appellee was charged by information with the offense of a Class A misdemeanor assault. Tex.Penal Code Ann. § 22.01 (West 1989). The issue presented is whether the trial court had the authority to dismiss the cause based on appellee's dismissal motion in which he claimed his due process and due course of law rights under the federal and state constitutions were violated because the State did not preserve a non-custodial tape-recorded interview of appellee by a police officer. We will reverse.

Appellee filed a pretrial motion to dismiss the cause with prejudice. He alleged that the unpreserved tape recording was exculpatory in nature, that it raised the issue of self-defense, and claimed that he would suffer immeasurable harm as a result of not being able to rely upon the recording in presenting his defense. Prior to trial, the trial court conducted a hearing on appellee's motion and took the matter under advisement. The State then presented its case-in-chief, that consisted of the testimony of the complainant, Dylan Preas, and Jason Eckstrom, who was seated near Preas at the time of the assault, but who was not otherwise involved. The tape recording was not mentioned in the presentation of the State's evidence. Appellee then renewed his motion to dismiss based on the allegations in his motion.[1] The trial court overruled the dismissal motion. Sergeant Rodriguo Herrera of the Austin Police Department was the first defense witness. He had taped the interview with appellee. When he was asked on direct examination about the interview, the trial court removed the jury and reminded counsel that a motion in limine had been granted prohibiting the parties from inquiring about the fact that appellee had a brother who was a member of the Austin Police Department. The colloquy that followed led to a recon-

sideration of the dismissal motion. The trial court then granted the motion and terminated the prosecution.

With this background, we shall examine the facts underlying the trial court's action in dismissing the information. At the pretrial hearing on appellee's motion to dismiss, Sergeant Herrera testified that in his investigation of the assault on Preas that occurred on August 11, 1990, he interviewed Preas on August 14, 1990, and that he then filed aggravated assault charges against appellee. Later, at Herrera's request, appellee came to the police station. After being warned by Herrera of his rights, appellee indicated his willingness to have the interview taped. Herrera explained that some but not all interviews by the Austin Police Department are tape-recorded, and that in the instant case he decided to use a tape. This was in accordance with normal practice of the Austin Police Department. After the interview, the tape was placed in the case file. Herrera revealed that during his investigation he learned that the six or eight men, who had later joined in the assault upon the complainant, were gang members who had had previous difficulty with the law. Herrera stated that when this fact, among others, was relayed to the mother of the complainant, the mother indicated that "they" wanted to drop the charge against appellee. Herrera told the complainant's mother that she would have to contact the district attorney's office for that purpose. Assuming that the case was being dismissed, Herrera stated that at a later date he reused the tape in another interview and taped over the interview with appellee. Herrera explained that tapes not being held as evidence were reused in this manner.

Herrera acknowledged that he could not recall everything that was said during the interview but believed that he could recall most of the conversation. Herrera stated that appellee admitted hitting the complainant "because he (complainant) was messing with my girl." Appellee explained that his girlfriend had been receiving calls from the complainant; that he (appellee) was tired of

---

**1.** The motion was not urged as a motion for an instructed verdict.

the complainant; that he saw the complainant at a party and walked up to the complainant; that complainant jumped off a wall and threw a cigarette down; and that he (appellee) hit the complainant. Appellee explained to Herrera, "[T]hen a bunch of guys came in and starting beating up the victim."

Herrera testified that during the interview he told appellee that he did not believe appellee's story that he had not talked to the other assailants before the assault, or appellee's statement that he had not consulted with his brother, an Austin police officer, prior to the interview.[2]

Herrera did not consider the evidence obtained to be exculpatory. He did not recall any statement by appellee that he acted in self-defense. He did recall that appellee took it to be "a move of aggression" when the complainant jumped off a rock wall and threw down a cigarette. Herrera could not recall that appellee stated that the complainant had "flicked a cigarette" at appellee and "bowed up," but admitted it could have been said.

Appellee testified for the limited purpose of the pretrial hearing. He admitted that Sergeant Herrera had given him warnings about his rights and that he had agreed to have the interview taped. Appellee revealed that he told Herrera that he had hit the complainant and why. Appellee testified that he told Herrera that he had approached the complainant who was sitting on a rock wall with a friend, told him that they needed to talk, and informed the complainant to quit calling appellee's girlfriend, harassing her, and driving by her house. Appellee stated that he revealed to Herrera that at this point the complainant stood up, flicked a cigarette on him, and said that "he was not scared of me"; that the complainant "stood up straight" and his chest was out; and that he (appellee) felt that the complainant was getting ready to hit him, so he hit the complainant.

Appellee said that he told Herrera the "black guys," who later joined the attack on the complainant, were individuals with whom he had attended high school, but that he had not talked to them prior to the confrontation with the complainant. Appellee stated he had given Herrera the names of several witnesses and told him where they were standing at the time of the incident. Appellee stated that he "pretty much so" remembered the conversation with Herrera, but when asked if there was anything that had been said in the interview that had not been related by Herrera or by him, appellee replied he would have to hear the tape, which had not been preserved.

Appellee testified that he was permitted to leave and that Herrera promised to contact him if a warrant was issued to give him an opportunity to turn himself in to the proper authorities. Appellee stated he was never called nor arrested for the charged offense. Neither party contends that there was custodial interrogation.[3] *See Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

At the conclusion of the pretrial hearing, the trial court took the matter under advisement. When the State rested its case-in-chief, appellee reargued his dismissal motion and argued that he was going to have to waive his Fifth Amendment privilege "against testifying" to get his defense before the jury because the State had not preserved the tape-recorded interview. The State argued that appellee had failed to show bad faith on the part of the police and that the statements made were non-exculpatory and inadmissible hearsay. Nevertheless, the prosecutor observed that Sergeant Herrera was present to testify as to his recollections of the interview, and further "agreed to stipulate to anything defense counsel believes was said by the defendant to Sergeant Herrera, whether it

---

**2.** Herrera testified that he did not know appellee had a brother on the police force until the time of the interview.

**3.** Neither party makes reference to Tex.Code Crim.Proc.Ann. art. 38.22, § 3(b) (West Supp. 1993), which requires the preservation of every electronic recording of any statement made by an accused *during a custodial interrogation.* Obviously, neither party considered the interview in question to have been custodial interrogation.

was said or not." The offer was declined because "the jury is entitled to hear what demeanor they can pick up from the recorded statement . . . the tone of his (appellee's) voice. . . ." Appellee was aware at this time that the tape was no longer in existence. The trial court denied the motion to dismiss the cause. Later, during the presentation of the case for the defense, the trial court reconsidered and granted the pretrial motion to dismiss and terminated the prosecution.

■ Generally speaking, a court's authority to act is limited to those actions authorized by constitution, statute, or common law. *State v. Johnson*, 821 S.W.2d 609, 612 (Tex.Crim.App.1991). In addition to specific power to act conferred by constitutional or statutory provision or common law, all courts have inherent authority to take certain actions. *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 n. 1 (Tex. 1979) (a court has inherent judicial power that it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity). Courts also have implied authority to act arising from specific grants of power. *Johnson*, 821 S.W.2d at 612. Thus, a court may take a particular action only if that action is authorized by constitutional provision, statute, or common law, or the power to take the action arises from an inherent or implied power. *Id.*

We turn now to the question of whether a trial court has the authority to dismiss a criminal case. It has been consistently held that, in the absence of constitutional or statutory authority, a trial court cannot dismiss a prosecution except on the motion of the prosecuting attorney. *Wallace v. State*, 145 Tex.Crim. 625, 170 S.W.2d 762, 764 (1943); *State v. Shelton*, 802 S.W.2d 80, 81 (Tex.App.—Austin 1990), *vacated on other grounds*, 830 S.W.2d 605 (Tex.Crim. App.1991); *State v. Gray*, 801 S.W.2d 10, 11 (Tex.App.—Austin 1990, no pet.); *State v. Fox*, 772 S.W.2d 455, 457 (Tex.App.— Beaumont 1989, no pet.). However, trial courts have implicitly been granted the authority to dismiss a criminal prosecution without a motion by the prosecuting attorney when an exception to the charging instrument is granted or when the defendant's special plea is sustained. *See* Tex. Code Crim.Proc.Ann. arts. 27.01–28.14 (West 1989); *Gray*, 801 S.W.2d at 11; *see also State v. Eaves*, 800 S.W.2d 220 (Tex. Crim.App.1990). This is also true "when a defendant has been denied a speedy trial or, pursuant to article 32.01, when a defendant is detained and no charging instrument is properly presented." *Johnson*, 821 S.W.2d at 612 n. 2; *see also Zani v. State*, 701 S.W.2d 249, 253 (Tex.Crim.App.1983) (motion to dismiss indictment is correct means of challenging a prosecution prior to trial where the defendant had previously been granted immunity).

■ Texas Code Crim.Proc.Ann. art. 44.-01(a)(1) (West Supp.1992) permits the State to appeal an order that dismisses all or any portion of an indictment, information, or complaint. The statute does not, however, authorize the trial judge to dismiss a criminal case without the consent of the prosecutor. *Johnson*, 821 S.W.2d at 613; *Chandler*, 767 S.W.2d 211, 212 (Tex.App.—Eastland 1989, no pet.).

■ In *Johnson*, the Court of Criminal Appeals made plain its holding: "In sum, there is no general authority, written or unwritten, inherent or implied, which would permit a trial court to dismiss a case without the prosecutor's consent." *Johnson*, 821 S.W.2d at 613; *see also Barre v. State*, 826 S.W.2d 722, 725 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). *Harris County District Attorney's Office v. Burns*, 825 S.W.2d 198, 201 (Tex.App.— Houston [14th Dist.] 1992, pet. ref'd). We conclude that in the instant case the trial court was without authority to dismiss the information without the prosecutor's consent.

If it can be argued that the trial court had authority to support its action, appellee was not entitled to the remedy he sought, i.e., dismissal of the information. This leads to our consideration of "what might loosely be called the area of constitutionally guaranteed access to evidence." *United States v. Valenzuela–Bernal*, 458 U.S. 858,

867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982); *Cuesta v. State,* 763 S.W.2d 547, 555 (Tex.App.—Amarillo 1988, no pet). The question presented is one involving a failure to preserve potentially exculpatory evidence, not a failure to disclose evidence. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985).

In *Cuesta,* the court wrote:

In *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), the Supreme Court addressed the question of whether the Fourteenth Amendment requires that the prosecution preserve potentially exculpatory evidence. *Trombetta* arose out of a drunken driving prosecution in which the State introduced the results of an alcohol breath test. Counsel for the defense sought to suppress the test results on the ground that the State failed to preserve the breath samples used in the test. The Supreme Court rejected the defendant's argument, holding that the State's duty to preserve evidence must be limited to evidence that might be expected to play a significant role in the defense of the accused. 467 U.S. at 488–89, 104 S.Ct. at 2533–34, 81 L.Ed.2d at 422. Furthermore, to meet this standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent to the State before the evidence was lost or destroyed, and it must be of such nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *Id.* In *Trombetta* the Supreme Court found no due process violation because (1) the officers acted in good faith and in accord with their normal practice, (2) in light of the procedures actually used, the chances that the evidence in question would have exculpated the defendants were slim, and (3) the defendants had alternative means of demonstrating their innocence. *Id.*

*Cuesta,* 763 S.W.2d at 555; *see also Gardner v. State,* 745 S.W.2d 955, 958–59 (Tex. App.—Austin 1988, no pet.).

More recently, the Supreme Court has held that the failure to preserve potentially useful evidence does not constitute a denial of due process under the Fourteenth Amendment unless the defendant can show bad faith on the part of the State. *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988); *see also United States v. Galvan–Garcia,* 872 F.2d 638, 641 (5th Cir.1989); *Saldana v. State,* 783 S.W.2d 22, 23 (Tex.App.—Austin 1990, no pet.).

■ In the instant case, the trial court expressly declared that there was no bad faith on the part of the State, and we do not understand appellee to contend otherwise. This is supported by the record. In this context, bad faith would be shown if the State knew the item destroyed was exculpatory. *See Youngblood,* 488 U.S. at 56, 109 S.Ct. at 336; *Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2533. Officer Herrera had no knowledge of the exculpatory value, if any, of the unpreserved tape. He reused the tape in accordance with normal practice after understanding the case would be dismissed by the complainant. Based on the testimony of Herrera and appellee himself, the taped interview must be viewed as highly incriminating. Appellee acknowledged that he initiated the confrontation and struck the first blow. The chances that the evidence in question would have exculpated appellee were slim. Exculpatory evidence is generally that evidence which would clear or tend to clear the accused from fault or guilt. *County v. State,* 812 S.W.2d 303, 313 (Tex.Crim.App. 1989); *Davis v. State,* 474 S.W.2d 466, 467–68 (Tex.Crim.App.1971); *Moore v. State,* 60 S.W.2d 453, 454 (Tex.Crim.App.1933). For the specific purposes of the rule constraining the State from disposing of potentially exculpatory evidence, the rule is the same. *Gibson v. State,* 718 P.2d 283, 283 (Idaho 1986).

■ The statements supposedly made in the taped interview and upon which appellee relies would not have established

self-defense[4] as a matter of law. *See Daniel v. State,* 668 S.W.2d 390, 393 (Tex. Crim.App.1984). The statements, however, may have been sufficient for submitting the issue of self-defense to the jury. *Id.* It was undisputed that appellee brought about the confrontation. Appellee relies on the testimony that the complainant got off of the wall, flicked a cigarette at or on appellee, stood up straight and "bowed" his chest, and said he was not afraid of appellee. Appellee testified that he told Herrera that at this point in the confrontation he felt that the complainant was getting ready to hit him, and he regarded complainant's actions as a "move of aggression." Appellee insisted at trial that without this "exculpatory" evidence he could not raise the issue of self-defense without surrendering his privilege against self-incrimination. Of course, the use of force against another is not justified by verbal provocation alone or, with certain exceptions, when the other's use or attempted use of unlawful force has been provoked. *See* Tex.Penal Code Ann. § 9.31(b)(1) & (4) (West 1974).

▮▮▮▮ Even if the statement to Herrera could be considered "exculpatory," as self-serving out-of-court statements, they were inadmissible hearsay. *Hafdahl v. State,* 805 S.W.2d 396, 402 (Tex.Crim.App.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991). It is the general rule in Texas that self-serving declarations are not admissible in evidence as proof of the facts asserted. *Allridge v. State,* 762 S.W.2d 146, 152 (Tex.Crim.App.1988), *stay denied,* 488 U.S. 1026, 109 S.Ct. 835, 102 L.Ed.2d 968, *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989); 24 Tex.Jur.3d *Criminal Law* § 3058 (1982).

Exceptions to this general rule were noted in *Singletary v. State,* 509 S.W.2d 572, 576 (Tex.Crim.App.1974). The statements in question do not qualify under the "res gestae" exception. They were made in an out-of-court setting days after the alleged offense when appellee had had ample time to consider and calmly reflect on what had happened. The statements also fail to pass muster as a part of a statement or conversation previously proven by the State. The State made no effort to present any evidence of the taped interview in its case-in-chief or at any other time. The third exception involves statements that are necessary to explain or contradict acts or declarations first offered by the State. The theory behind the third exception was explained in *Reado v. State,* 690 S.W.2d 15, 17 (Tex.App.—Beaumont 1984, pet. ref'd). It does not mean that all self-serving statements by an accused are admissible. *Id.* When the accused does not testify, self-serving statements are not admissible in evidence when they *merely* contradict some act or declaration first proffered by the State. *Id.* The statements must be *necessary* to explain or contradict an act or declaration first offered by the State to prevent the fact finder from being misled or perceiving a false, incorrect impression. *Id.; see also Starks v. State,* 776 S.W.2d 808, 811 (Tex.App.—Fort Worth 1989, pet. ref'd) (defendant, who elected not to testify at trial, was not entitled to offer exculpatory statement made to police that contradicted same acts or declarations first offered by the prosecution). In the instant case, appellee did not testify or show that he was entitled to prevail under the third exception. Unless a defendant's self-serving

**4.** Tex.Penal Code Ann. § 9.31(a) & (b) (West 1974) provides:

(a) Except as provided in Subsection (b) of this section, a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force.

(b) The use of force against another is not justified:

(1) in response to verbal provocation alone;

(2) to resist an arrest or search that the actor knows is being made by a peace officer, or by a person acting in a peace officer's

presence and at his direction, even though the arrest or search is unlawful, unless the resistance is justified under Subsection (c) of this section;

(3) if the actor consented to the exact force used or attempted by the other; or

(4) if the actor provoked the other's use or attempted use of unlawful force, unless:

(A) the actor abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(B) the other nevertheless continues or attempts to use unlawful force against the actor.

statements fall under any of the enumerated exceptions to the general rule, they are not admissible into evidence. *Allridge,* 762 S.W.2d at 152. Appellee's self-serving statements were not admissible under these circumstances even if they are considered as "exculpatory."

 Moreover, appellee had alternative means of demonstrating his innocence or raising the issue of self-defense without having to testify himself. Self-defense may be raised by the testimony of witnesses other than the defendant. *Smith v. State,* 676 S.W.2d 584, 586–571 (Tex.Crim. App.1984); *Reed v. State,* 703 S.W.2d 380, 384 (Tex.App.—Dallas 1986, pet. ref'd). Appellee told Herrera the names of several eye witnesses and explained where they were standing at the time of the alleged offense. There was no showing that these witnesses were unavailable at the time of trial. Eckstrom, who was sitting on the wall with the complainant but was not involved in the incident, was a State's witness. Appellee had the opportunity to cross-examine Eckstrom but he was unable to establish any evidence raising the issue of self-defense. Further, the State offered to stipulate as to what the appellee claimed he said in the taped interview. The offer was not accepted. It is clear that appellee was able or should have been able to obtain comparable evidence by reasonable means. *See Trombetta,* 467 U.S. at 488, 104 S.Ct. at 2533. It is obvious from this cold record that appellee's counsel was trying to get as much mileage as possible out of the lack of preservation issue without waiving it. Counsel was painfully aware that if he succeeded in getting the "exculpatory" evidence before the jury, the role of optional completeness would come into play and permit the State to introduce the balance of the conversation with Herrera which contained highly incriminating evidence. *See* Tex.R.Crim.Evid. 107. The failure to preserve the taped interview did not constitute, under the presented circumstances, a violation of due process or due course of law as claimed by appellee. Even if it can be said that the trial court had authority to dismiss the information, his basis for doing so was erroneous. The State's point of error is sustained.

 The district court's order dismissing the indictment and cause is reversed. The cause is reinstated and remanded to the trial court for proceedings consistent with this opinion. The motion to dismiss was that of appellee. Such motion is assumed to remove any barrier to re-prosecution. *Cf. Crawford v. State,* 703 S.W.2d 655, 662 (Tex.Crim.App.1986); *Fields v. State,* 627 S.W.2d 714, 720 (Tex.Crim.App. 1982); *Chvojka v. State,* 582 S.W.2d 828, 830–31 (Tex.Crim.App.1979); *see also United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).