TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00180-CR






Graviel Hernandez Rodriguez, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-96-0325, HONORABLE CHARLES E. (CHUCK) MILLER, JUDGE PRESIDING







 This is an appeal from a conviction for aggravated assault with a deadly weapon. Tex.
Penal Code Ann. § 22.02(a)(2) (West 1998). After finding appellant, Graviel Hernandez Rodriguez, guilty,
the jury also found that he had been previously convicted of two felonies as alleged in the indictment for
enhancement of punishment. See Tex. Penal Code Ann. § 12.42(d) (West 1994). The jury assessed
punishment at 75 years' imprisonment. (1) We affirm the judgment of conviction.


One Point of Error


 The sole point of error is that the trial court erred in overruling appellant's written motion
to dismiss the cause "because of the destruction of the defendant's automobile" as a result of the State's
failure to preserve potentially exculpatory evidence. Appellant argues that the State permitted the
destruction of the automobile alleged to be a deadly weapon before he and his "defense team" had an
opportunity to examine the vehicle for any defects. The main thrust of his argument at trial and on appeal
is that the driver's car carpet which caused the "accident" was destroyed along with the vehicle. In his
written motion to dismiss, appellant relied solely upon the due process clause of the Fourteenth Amendment
to the United States Constitution.


Facts


 The sufficiency of the evidence is not challenged, but a brief recitation of the facts will place
appellant's contention in proper perspective. About 11 p.m. on June 26, 1996, San Marcos Police Officer
Stuart Ellis was on patrol duty when he observed a 1979 Chevrolet station wagon occupied by a male
driver and a female passenger. The vehicle matched the description of a motor vehicle reportedly involved
in a disturbance earlier in the evening. Officer Ellis began to follow the station wagon and turned on the
overhead lights on his patrol unit. The station wagon accelerated in an obvious attempt to evade the officer. 
It reached speeds from 70 to 80 to 90 m.p.h. The vehicle ran two stops signs, drove the wrong way down
a three-lane access road to IH 35, forced three different civilian cars off the roadway, drove directly at a
police vehicle blocking access to the wrong way up an "exit" ramp to IH 35, swerved at the last second,
and continued its high-speed flight through a residential neighborhood. Ultimately, the station wagon
collided with a marked police vehicle at an intersection and injured Officer Tracy Balusek. The driver of
the station wagon fled the scene. When he was apprehended a few minutes later, he told the arresting
officer in obscene, four-letter words that the officer could not do anything to him. Officer Ellis, who made
the arrest, identified the appellant as the driver of the station wagon, and described him as being intoxicated
at the time of the arrest. The police learned that the registered owner of the station wagon was Saucedo
Construction Company. Officer Ellis testified that the station wagon was being operated in a manner that
was capable of causing death or serious bodily injury. (2)

 Testifying in his own behalf, appellant acknowledged that he was driving the station wagon and
accelerated when he saw the flashing lights on the patrol unit. He explained that he was "running scared"
because he had been drinking that afternoon, knew that he might be arrested for driving while intoxicated,
knew that there was an outstanding warrant for his arrest for public intoxication from the City of Lockhart,
and he wanted to prevent his vehicle from being impounded. Appellant related that he was trying to reach
the Saucedo Construction Company where he could park his station wagon. (3) He admitted that in the
process he committed many traffic offenses as described by the officer witnesses. He explained that it was
an "accident" that the station wagon struck Officer Balusek's vehicle; that the carpet under the driver's feet
"slipped" or "stuck" and caused the car to accelerate just prior to the collision; and that the same thing had
happened on a previous occasion when the carpet, which he obtained from another car at Saucedo
Towing, "slipped." On direct examination, he acknowledged that despite the difficulty with the carpet, he
did not think that he could have avoided hitting the police vehicle. He agreed, however, that the brakes
on the station wagon were in good working order at the time. Manuela Pineda, a defense witness, testified
that she was in the station wagon approximately a year before the offense when the carpet caused the gas
pedal to depress, resulting in the acceleration of the vehicle.

 The defense also offered evidence that the station wagon was impounded by the police on
June 26, 1996, and transferred to the Southwest Towing Company for storage on July 10, 1996. On July
18, 1996, counsel was appointed by the trial court for appellant. Melanie Hazelwood, Office Manager for
Southwest Towing, testified that she did not make decisions about the disposition of wrecked cars stored
by the company. She remembered the station wagon in question and recalled it was "smashed pretty
good," and that vehicles in that condition were normally taken to salvage yards or were crushed. 
Hazelwood stated that the A to Z Auto Crushers "came and picked up" the station wagon. She did not
testify as to dates; however, a vehicle log which she kept reflected that the station wagon was "released"
to A to Z Auto Crushers on July 20, 1996. To add to the confusion, Hazelwood identified a letter from
her company to Saucedo Construction Company, the registered owner of the vehicle, that if storage
charges were not paid the vehicle would be declared abandoned within ten days. The letter was dated
August 31, 1996. The record is devoid of evidence when or if the vehicle was crushed or destroyed or
if the carpet in question was in the vehicle at the time.


The Hearings


 At the request of the trial court, the motion to dismiss the cause was not heard until the
conclusion of the guilt/innocence stage of the trial. The motion, based on a violation of federal due process,
alleged that the speedy destruction of the station wagon was indicative of bad faith on the part of the State
and that since the vehicle was described as a deadly weapon in the indictment the vehicle's condition was
material evidence. The motion stated that appellant anticipated raising issues concerning "unique
mechanical problems" with the vehicle, but was unable to have the vehicle examined by an expert.

 At the hearing, appellant did not rely upon any "unique mechanical problems." He urged
that the cause of the "accident" was the carpet which had not been preserved by the State and that he had
been deprived of an expert to testify that there was a probability that the "accident" had happened that way. 
He urged that the State had acted in bad faith. The State countered that it had not acted in bad faith and
that appellant's "cause-of-the-accident" argument was supported by his own testimony and that of Pineda. 
The trial court overruled the motion.


Federal Due Process


 Loss or destruction of potentially exculpatory evidence can result in a denial of federal due
process. See Burke v. State, 930 S.W.2d 230, 232 (Tex. App.--Houston [14th Dist.] 1996, pet. ref'd);
see also generally 41 George E. Dix and Robert O. Dawson, Criminal Practice and Procedure, §
22.27 at 437-441 (Texas Practice 1995) (hereinafter Dix). The question presented does not involve a
failure to disclose evidence as in United States v. Bagley, 473 U.S. 667, 676 (1985) and Brady v.
Maryland, 373 U.S. 83, 87 (1963), but a failure to preserve potentially exculpatory evidence. See State
v. Morales, 844 S.W.2d 885, 890 (Tex. App.--Austin 1992, no pet.).

 A duty to preserve evidence is limited to evidence that might be expected to play a
significant role in the suspect's defense. California v. Trombetta, 467 U.S. 479, 488 (1984). To meet
this standard of materiality, the "evidence must both possess an exculpatory value that was apparent before
the evidence was destroyed and be of such a nature that the defendant would be unable to obtain
comparable evidence by other reasonably available means." Id. at 489; see also McDonald v. State, 863
S.W.2d 541, 543 (Tex. App.--Houston [1st Dist.] 1993, no pet.). The State has no duty to discover
evidence that exonerates the accused, only to preserve evidence possessing an exculpatory value. See
Carmona v. State, 880 S.W.2d 227, 231 (Tex. App.--Austin 1994), vacated on other grounds, 941
S.W.2d 949 (Tex. Crim. App. 1997). 

 The accused must establish that the evidence in question would have been both favorable
and material to his defense. See United States v. Valenzuela-Bernal, 458 U.S. 858, 873 (1982); Nastu
v. State, 589 S.W.2d 434, 441 (Tex. Crim. App. 1979), cert. denied, 447 U.S. 911 (1980); Mahaffey
v. State, 937 S.W.2d 51, 53 (Tex. App.--Houston [1st Dist.] 1996, no pet.). A showing that the
evidence might have been favorable does not meet the materiality standard. Lee v. State, 893 S.W.2d
80, 87 (Tex. App.--El Paso 1994, no pet.); McDonald, 863 S.W.2d 252 at 253.

 In addition, the United States Supreme Court has held that the failure to preserve potentially
useful evidence does not constitute a denial of due process unless the accused can show bad faith on the
part of the State. See Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Burke, 930 S.W.2d at 236;
Morales, 844 S.W.2d at 890.



No Violation of Due Process


 In the instant case, appellant has failed to establish that the State acted in bad faith. See
generally Williams v. State, 946 S.W.2d 886, 893 (Tex. App.--Waco 1997, no pet.). What constitutes
"bad faith" is not altogether clear from the case law. As in Trombetta, there was no allegation or showing
that the police acted with "official animus" towards the accused or acted with "a conscious effort to
suppress exculpatory evidence." 467 U.S. at 488. Either would suggest "bad faith" but neither is present
here. The record reflects that the station wagon in question was handled in a routine manner after its
impoundment by the police and there was no showing that the vehicle or the driver's floor carpet had an
exculpatory value that was apparent to the police before the transfer of the vehicle to a towing or storage
company. Some thirteen days after its impoundment the station wagon was transferred to the towing
company on July 10, 1996. One log of that company's records reflects the vehicle was "released" to A
to Z Auto Crushers on July 20, 1996, yet the towing company sent a letter to the registered owner on
August 31, 1996, that if the storage fees were not paid within ten days the station wagon would be declared
abandoned. No records of the A to Z Auto Crushers were offered to show what disposition, if any, was
made of the vehicle or the carpet. The record shows the police made no effort to have the towing company
or anyone else speed the disposition of the vehicle. Appellant failed to establish that the State acted in bad
faith.

 Next, we observe that appellant failed to show that the destroyed or nonpreserved
evidence was both favorable and material. A mere possibility that the evidence would have exculpated the
accused is not sufficient to meet the requirement of materiality. See Youngblood, 488 U.S. at 56 n*. 
"Thus, a defendant must apparently show at least a substantial or considerable likelihood that the evidence,
if preserved, would have tended to show his innocence." Dix, § 22.27 at 439.

 Still further, appellant testified that the car carpet caused the "accident" and offered another
witness to a similar problem with the carpet on a prior occasion. He did not call as a witness the female
passenger in the station wagon on the night in question. There is nothing to show that appellant could not
have called experts or other qualified witnesses to testify that carpet of the same design, size, and type
could have caused the vehicle to accelerate at the time of the offense. The destroyed material exculpatory
evidence must have been "of such nature that the defendant [is] unable to obtain comparable evidence by
other reasonable means." Trombetta, 467 U.S. at 489.

 The record reflects little or no likelihood that the vehicle or the carpet was exculpatory
evidence as required. No showing was made that appellant was significantly prejudiced at trial by the
absence of the evidence, or that there was culpability on the part of the State. Appellant was not denied
federal due process as claimed in his written motion to dismiss. The trial court did not err in overruling the
motion.


No Texas Constitutional Issue Raised


 In his appellate brief, appellant urges this Court "to depart from the federal precedent
established in Youngblood." He does not explain how we do this when the issue he has raised is federal
due process and the United States Supreme Court's opinion in Youngblood is extant. Appellant requests
that "as permitted by Article I, Sec. 9 of the Texas Constitution," we fashion a more pragmatic approach
for our State. He cites Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991). At trial, appellant
did not object on the basis of any designated portion of the Texas Constitution. To preserve error for
review, appellant must have made a timely and specific objection. Tex. R. App. P. 33.1(a)(1). A point
of error must correspond to the objection at trial. Martinez v. State, 867 S.W.2d 30, 35 (Tex. Crim.
App. 1993), cert. denied, 512 U.S. 1246 (1994). An objection stating one legal basis may not be used
to support a different legal theory on appeal. Rezac v. State, 782 S.W.2d 867, 700 (Tex. Crim. App.
1990). Appellant's argument based on article I, section 9 of the Texas Constitution is not presented for
review. The sole point of error is overruled.

 The judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Jones, Kidd and Onion*

Affirmed

Filed: June 11, 1998

Do Not Publish






* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. At the penalty phase of the trial, appellant's prior criminal record was shown to include convictions
for burglary, theft, assault, and numerous convictions for driving while intoxicated.
2. One of the definitions of 'deadly weapon' is "[A]nything that in the manner of its use or intended use
is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(17)(B) (West 1994).
3. Appellant testified that he made the last payment on his vehicle the Friday preceding his arrest. He
did not reveal from whom he had purchased the automobile. There was evidence that he worked at
Saucedo Construction Company.



ndant must apparently show at least a substantial or considerable likelihood that the evidence,
if preserved, would have tended to show his innocence." Dix, § 22.27 at 439.

 Still further, appellant testified that the car carpet caused the "accident" and offered another
witness to a similar problem with the carpet on a prior occasion. He did not call as a witness the female
passe