No. 04-01-00646-CR



Carl Bernard CRAIG,


Appellant



v.



The STATE of Texas,


Appellee



From the County Court at Law No. 9, Bexar County, Texas


Trial Court No. 790431


Honorable Wayne Christian, Judge Presiding



Opinion by: Phil Hardberger, Chief Justice


Sitting: Phil Hardberger, Chief Justice

 Alma L. López, Justice

 Sandee Bryan Marion, Justice


Delivered and Filed: October 9, 2002


AFFIRMED

 Carl Bernard Craig ("Craig") was convicted after a bench trial of terroristic threat and
sentenced to sixty days confinement in the adult detention center and a fine of $2,000. On appeal,
Craig asserts three points of error, contending: (1) his constitutional rights were violated by the
State's failure to preserve a videotape of the incident; (2) the evidence is insufficient to support his
conviction; and (3) the trial court abused its discretion in admitting a knife into evidence. We
overrule these points of error and affirm the trial court's judgment.

Background


 Because Craig challenges the sufficiency of the evidence, the testimony at trial is set forth in
detail.

 Cassie Kines, the complainant, testified that she was working the front desk at a motel. The
front desk is in an enclosed room with a window through which the clerk could communicate with
the customers. Craig stopped at the counter and told Kines that he was going to clean the motel's
carpets. Craig then told Kines that he did not want to clean her manager's carpet; he wanted to clean
Kines's carpet. Kines testified that she did not like the way Craig's statement sounded and that she
told him, "I don't think so." Craig then called Kines a chicken head. Kines told Craig he needed to
leave. Craig stepped toward the door but then walked toward the counter and told Kines that he
could have her. When Kines stated that he could not, Craig told her that he had money and pulled
money from his pocket. Kines told Craig that she did not want his money, but Craig kept repeating
that he was going to have Kines. Eventually, Craig left.

 Later, Craig called Kines and asked what caller she had transferred to his room. Kines
testified that Craig was cussing at her and telling her that she did not know him. Craig told Kines that
people called him "Crazy Craig." After Craig hung up, Kines locked the door to the front desk area
in the office. Craig came into the office and tried to open the door to the front desk area. Kines
testified that Craig was angry and told Kines that he was going to kill her and whoever called his
room. Kines testified that Craig reached down in his pocket and pulled out a knife. Craig continued
cussing at Kines and opened the knife. Kines testified that she was afraid. A female called Kines
from Craig's room. After Craig left, Kines called 911 and stated that she was sexually harassed and
wanted to press charges.

 During cross-examination, Kines stated that she told the investigating officers about the video
cameras that filmed the office area. Kines stated that "they" looked at the video, but Kines stated that
"they" could not see the knife when Kines's manager looked at the video. In response to further
questions by the trial judge, Kines stated that Craig opened the knife when he told her that he would
kill her.

 Officer Jimmy Castillo testified that he was dispatched to the motel. While Officer Castillo
was in the office, Kines received a phone call at the front desk. Kines handed the phone to Officer
Castillo. Officer Castillo stated that the caller was Craig, and Craig was yelling. Officer Castillo
informed Craig that he was speaking to an officer. Craig started to explain his version of the events,
and Officer Castillo informed Craig that he would go to his room to speak with him after he had
spoken with Kines. After speaking with Kines, Officer Castillo proceeded to Craig's room. Craig
opened the door and allowed Officer Castillo inside. Officer Castillo observed the knife that was
allegedly used on the table in front of Craig. Officer Castillo retrieved the knife and placed it in his
back pocket. Officer Castillo told Craig Kines's version of the events. Craig's girlfriend became
angry. At that time, Craig told Officer Castillo that he had not gone downstairs. Officer Castillo told
Craig that they had a videotape. While testifying, Officer Castillo admitted that he had not viewed
the videotape. After learning of the videotape, Craig admitted that he went downstairs and spoke
with Kines but stated that he did not threaten her. Officer Castillo told Craig that they would look
at the video, and if Craig did not do anything, he did not have to worry. At that time, Officer
Castillo's partner arrived, and Craig changed his story again. Craig told the officers that he went
downstairs with a knife that he left open at his side, and he did not threaten anyone.

 On cross-examination, Officer Castillo admitted that he did not write a report of the incident.
Officer Castillo stated that Kines had told him that two possible witnesses came into the office during
her altercation with Craig, but Kines did not know who the men were or where they went. Officer
Castillo stated that he made an attempt to view the video, but he did not actually see the video.

 Officer Mark Esquivel testified that he went to the motel in response to a call for a possible
disturbance. Officer Esquivel stated that he went directly to Craig's room because a lady waved him
down and informed him that Officer Castillo was in the room. Officer Esquivel testified that Craig
was loud and difficult to understand. Officer Esquivel testified that Craig appeared to have been
drinking alcohol. Officer Esquivel stated that Craig initially denied going downstairs. Craig later
admitted to the officers that he went downstairs with the knife but left the knife in his pocket. Officer
Esquivel took custody of the knife from Officer Castillo. Officer Esquivel later took the knife to the
property room. Officer Esquivel identified the tag number on the envelope used to identify the knife.
Officer Esquivel opened the envelope and stated that the knife inside was the knife he was handed
by Officer Castillo. Officer Esquivel stated that he had retrieved the envelope from the property room
the preceding day and signed the necessary form to have the envelope released to him. Officer
Esquivel further testified that he was subsequently contacted by Craig's girlfriend, who wanted to
give him some additional information.

 On cross-examination, Officer Esquivel testified that Officer Castillo told him that he allowed
the girlfriend to leave before Officer Esquivel arrived. Officer Esquivel stated that allowing a witness
to leave before an investigation is complete is not standard operating procedure. Officer Esquivel
testified that he did not examine or collect the videotape. Officer Esquivel stated that he made a
mistake in failing to retrieve the videotape as evidence. Officer Esquivel further stated that he made
another mistake in failing to inform Craig of his rights when he arrested him.

 On recall, Officer Castillo identified the knife that was introduced into evidence as the knife
he had taken from Craig. Officer Castillo admitted that he failed to initial the knife.

 Linda Rector was the manager of the motel at the time of the incident. Rector testified that
she viewed the videotape of the incident. Rector observed Kines at the window with her back to the
camera. Rector saw Craig on the other side of the window, but Kines was partially blocking the view
of Craig. Rector stated that she did not see Craig brandishing anything or making any gestures.
Rector stated that she could only see Craig standing at the window, but the video was not very clear.
Rector stated that the officers never looked at the video. Rector did not know if the video was kept
by the motel. Rector stated that she accompanied the officer to Craig's room. Rector testified that
Craig stated that he was not dressed, so Rector remained in the hall while the officer went into the
room. Rector testified that the officer collected a knife and asked Rector to hold it. Rector saw the
other officer arrive and motioned him to the room. Rector held the knife for a few more minutes and
then gave it to the officer when he came back outside. Rector stated that the knife that was
introduced into evidence looked similar to the knife that she was given but not identical.

 On cross-examination, Rector stated that the video did not have any sound and the image was
blurry. Rector further stated that part of Craig was blocked by Kines's back on the video. Rector
stated that if Craig brought his hand up on the side it would be obscured.

 Jessie Williams, Craig's girlfriend, testified that after she and Craig checked into the motel,
Craig left to get some refreshments. Craig returned 15 or 20 minutes later with a bottle of water and
a can of beer. Craig answered the phone and became upset. Williams testified that Craig took his
pocket knife and left in a rage. Williams stated that Craig was gone for 10 or 15 minutes. Williams
testified that she called Kines to determine how the call had been transferred to their room. Williams
testified that Kines did not sound upset and that Williams was on the phone with Kines the entire time
that Craig was gone. Williams testified that when Craig returned, he called Kines. Williams testified
that a police officer spoke with Craig. The officer later came to the room. When the officer knocked,
Craig opened the door and told them what Kines said. Williams told the officer her version of the
events but told the officer that she did not know what happened downstairs.

 The trial court found Craig guilty of terroristic threat and sentenced him to sixty days
confinement and a $2,000 fine.

Videotape


 In his first point of error, Craig complains that his constitutional rights were violated because
the State failed to preserve the videotape. (1) The State has a duty to preserve favorable, material
evidence, which is evidence that: (1) has an exculpatory value that is apparent before the evidence
is destroyed; and (2) is of such a nature that the defendant would be unable to obtain comparable
evidence by any other reasonably available means. California v. Trombetta, 467 U.S. 479, 490
(1984); Garay v. State, 954 S.W.2d 59, 67 (Tex. App.--San Antonio 1997, pet. ref'd). Showing
that the lost evidence "might" have been favorable does not satisfy the materiality requirement. Paez
v. State, 995 S.W.2d 163, 174 (Tex. App.--San Antonio 1999, pet. ref'd). In addition, the defendant
must show that the State acted in bad faith in failing to preserve the evidence. Arizona v.
Youngblood, 488 U.S. 51, 58 (1988); Paez, 995 S.W.2d at 174.

 Craig did not satisfy his burden of showing that the State's failure to preserve the videotape
in the instant case resulted in a constitutional violation. First, Craig failed to show that Rector's
testimony describing the videotape was not sufficiently comparable to viewing the actual videotape.
Second, Craig failed to show that the videotape was favorable. Rector testified that the tape was
blurry and the ability to view the events was blocked or obscured by Kines's back. Finally, Craig
failed to prove that the State's failure to preserve the videotape was the result of bad faith on the part
of the officers. Bad faith might be shown if the State knew the item destroyed was exculpatory,
which is evidence which would clear or tend to clear the accused from fault or guilt. State v.
Morales, 844 S.W.2d 885, 890 (Tex. App.--Austin 1992, no pet.). In this case, the evidence
showed: (1) the State did not have knowledge that the video was exculpatory because the officers
never viewed the video; and (2) even if the officers had viewed the video, the tape did not clear or
tend to clear Craig from fault or guilt because the video was inconclusive due to its quality and the
obscured view it provided. Officer Castillo, who had been on the force for six months, stated that
he had asked the manager for the video and made an attempt to look at the video. From the broken
answers Officer Castillo was able to provide without violating the hearsay rule and from Rector's
subsequent testimony regarding the quality and contents of the video, the trial judge could have
inferred that Officer Castillo did not look at the video based on what Rector told him regarding the
quality and contents of the video. Officer Esquivel, who had been on the force for about nine months,
was asked why he did not review the videotape. Officer Esquivel began to reply, "Officer Castillo
had stated," when defense counsel objected to any hearsay statement. Officer Esquivel admitted that
he made a mistake in not collecting the videotape. While the officers' failure to review and preserve
the videotape may show negligence on the part of the officers, perhaps due to lack of experience, it
does not demonstrate bad faith. Saldana v. State, 783 S.W.2d 22, 24 (Tex. App.--Austin 1990, no
pet.).

 Craig's first point of error is overruled.

Sufficiency of the Evidence


 In reviewing the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the prosecution to determine whether a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979). In our factual sufficiency review, we must consider all of the evidence to determine whether
the judgment is "so contrary to the overwhelming weight of the evidence to be clearly wrong and
unjust." Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The trial judge, as the trier
of fact, is required to evaluate the credibility and demeanor of the witnesses and to determine the
weight to be given contradictory testimony. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). We are not permitted to reweigh the evidence, rather we defer to the trier of fact's findings,
particularly those based on credibility determinations. Id. at 407-09.

 A person commits the offense of terroristic threat if he threatens to commit an offense
involving violence to any person with intent to place any person in fear of imminent serious bodily
injury. Tex. Pen. Code Ann. § 22.07(a)(2) (Vernon 1994). "A person acts with intent with respect
to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire
to engage in the conduct or cause the result." Dues v. State, 634 S.W.2d 304, 305 (Tex. Crim. App.
1982). Intent may be inferred from the acts, words, or conduct of the accused. Id. Section 22.07
does not require the victim or anyone else to be actually placed in fear of imminent serious bodily
injury. Id. The offense is completed if the accused, by his threat, sought as a desired reaction, to
place a person in fear of imminent serious bodily injury. Id. Whether the accused had the capability
or the intention to actually carry out his threat is immaterial. Id.

 Kines testified that Craig threatened to kill her and pulled out a knife that he later opened.
Officer Castillo testified that Craig admitted that he went downstairs with a knife that he left open at
his side, but Craig denied threatening anyone. Officer Esquivel testified that Craig admitted going
downstairs, but Craig stated that he left the knife in his pocket. Williams testified that Craig was in
a rage when he left the motel room with a knife; however, Williams stated that she was speaking on
the phone with Kines the entire time Craig was gone from the room. 

 The trial judge, as the trier of fact, was responsible for evaluating the credibility of the
witnesses and determining the weight to be given to their testimony. Cain v. State, 958 S.W.2d at
408-09. The trial judge could have chosen to believe Kines's version of the events since Craig's own
admissions supported a substantial part of Kines's testimony. In addition, the trial judge could have
chosen to disbelieve Williams's testimony that she remained on the phone with Kines while Craig was
out of the room. The trial court could have inferred Craig's intent to place Kines in fear of imminent
serious bodily injury by his words and by his actions in pulling out and opening a knife. Kines
testified that she was afraid, and Craig's inability to carry out his threat because Kines was locked in
the office is immaterial.

 The evidence is legally and factually sufficient to support Craig's conviction, and Craig's
second point of error is overruled.

Admissibility of Knife


 In his final point of error, Craig complains that the trial court erred in admitting into evidence
the knife Officer Castillo recovered from Craig's motel room. We review evidentiary rulings under
an abuse of discretion standard. Prystash v. State, 3 S.W.3d 522, 527 (Tex. Crim. App. 1999).
"[P]roof of chain of custody goes to the weight rather than the admissibility of the evidence." Silva
v. State, 989 S.W.2d 64, 68 (Tex. App.--San Antonio 1998, pet. ref'd). Theoretical gaps in the
chain of custody do not render evidence inadmissible absent evidence of tampering or commingling.
Id. 

 Officer Castillo testified that he recovered the knife from the table in front of Craig in the
motel room, and he subsequently gave the knife to Officer Esquivel. Officer Esquivel stated that he
placed the knife in the property room where it remained until he retrieved it for trial. In his brief,
Craig seeks to challenge the chain of custody based on Rector's testimony that she was handed the
knife; however, the trial judge could have disbelieved Rector. Craig's challenge to the chain of
custody goes to the weight of the evidence not its admissibility. Accordingly, the trial court did not
abuse its discretion in admitting the knife as evidence. Craig's third point of error is overruled.

Conclusion


 The trial court's judgment is affirmed.



 PHIL HARDBERGER, 

 CHIEF JUSTICE


DO NOT PUBLISH
1. In his brief, Craig contends that he also is complaining about the State's failure to disclose the tape's loss.
However, during the brief pre-trial hearing at which the videotape was discussed, the only objection was to the State's
failure to preserve the videotape, not to the State's failure to disclose the tape's loss. Therefore, the complaint
regarding the State's failure to disclose information regarding the videotape has not been preserved for our review.
See Tex. R. App. P. 33.1(a).