02-10-300-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00300-CR

 

 


 
 
 David Oyewole Falade
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 297th
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          Appellant
David Oyewole Falade appeals his convictions for aggravated robbery with a
deadly weapon while engaging in organized criminal activity and for burglary of
a habitation while engaged in organized criminal activity.  In three issues, Falade
contends that the trial court erred by allowing the State to introduce certain
photographs, by excluding a self-serving hearsay statement, and by denying his
challenge to a veniremember for cause.  We will affirm.

II.  Background

          Terrance
Nielsen came home in the early morning, Monday, February 2, 2009, and went to
bed while the rest of the family left for work and school.  Although he
initially heard a banging noise at the back of the house, he thought nothing of
it, believing the neighbor was doing yard work.  He then heard the stairs creak
and opened his eyes to see Falade coming into his bedroom holding a pistol.  Falade
raised the pistol, pointed it at Nielsen, and fired a shot to Nielsen’s right. 
Falade then pointed the pistol toward Nielsen’s head, demanding Nielsen’s money. 
Nielsen said he did not have his wallet.

          Falade
then forced Nielsen through the house, eventually forcing Nielsen into a closet
while Falade continued to pilfer.  At one point, Nielsen freed himself, called
9-1-1, and returned to the closet without Falade knowing he had done so.  Falade
then again forced Nielsen through the house in an attempt to find valuable
possessions, eventually forcing him to get under a bed in another bedroom.  Shortly
after, Nielsen heard Falade yell.  He then heard other voices yell “freeze” and
“drop the gun.”

          Officer
Bryant Parks and Officer Don Allred arrived shortly after the 9-1-1 call. 
Parks took position in the front of the house.  Allred went to cover the back
of the house.  As Allred approached the back door, Falade opened the door and
stepped out, pointing his pistol at Allred.  Allred yelled for Falade to drop
his gun.  After a short standoff, Falade threw his pistol down.  Allred ordered
Falade to lie on the patio.  After hearing Allred issue commands to Falade to
get down, Parks went to the backyard, where Allred had already apprehended
Falade.  Falade was in the prone position at Allred’s gunpoint.

At trial,
defense counsel, after the State’s hearsay objection and outside the presence of
the jury, questioned Parks about whether Falade had said anything to Allred. 
Parks said that Falade had said, “They made me do it.”  The trial court
sustained the State’s objection.  Also at trial, the State introduced a number
of photographs, some of which included Falade and other alleged gang members
flashing gang signs.  Other photographs contained only Falade holding a gun,
wearing brass knuckles, and wearing a bandana as a mask.  Defense counsel
objected to the photographs of Falade holding a gun, wearing brass knuckles,
and wearing the bandana.  The trial court overruled Falade’s objection and
allowed the State to introduce the photographs.  A jury returned a verdict of
guilty and assessed punishment at thirty-two years’ confinement on each case, to
run concurrently.  This appeal followed.

III.  Discussion

          A.      Photographs

In
his first issue, Falade argues that the trial court erred by allowing the State
to introduce photographs that display him holding a gun, wearing brass
knuckles, and wearing a bandana as a mask.  Specifically, Falade argues that
these photographs “impermissibly alluded to the commission of extraneous
offenses and impermissibly introduced character evidence against” him.  See
Tex. R. Evid. 404(b).  The State argues that Falade failed to object at trial
under rule 404(b) of the Texas Rules of Evidence and has waived this issue for
our review.  The State also argues that the photographs were relevant to
establish its case-in-chief.  Although Falade’s objection at trial was largely
based on rule 403 of the Texas Rules of Evidence, he also objected to the
introduction of these photographs because, according to Falade, the photographs
“[went] to [Falade’s] specific prior bad act[s].”  We conclude that Falade has
preserved this alleged error for our review.

We
review the trial court’s determination to admit evidence under an abuse of
discretion standard.  See Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim.
App. 2003).  The trial court does not abuse its discretion unless its
determination lies outside the zone of reasonable disagreement.  See
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on
reh’g).

Evidence
of extraneous offenses is not admissible as character evidence.  See
Tex. R. Evid. 404(b).  Such evidence may be admissible, however, if the
evidence has relevance other than to show character conformity.  Moses,
105 S.W.3d at 626.  Examples within the rules of evidence include “proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident . . . .”  Tex. R. Evid. 404(b).  Even
relevant evidence offered for a permissible purpose under rule 404(b) may be
excluded if its probative value is substantially outweighed by the danger of
unfair prejudice.  See Tex. R. Evid.  403; Moses, 105 S.W.3d at
626.  In determining whether the danger of unfair prejudice outweighs the
probative value of the evidence of an extraneous offense, we consider (1) how
compellingly the extraneous offense evidence serves to make a fact of
consequence more or less probable; (2) the potential of the evidence to
impress the jury in an irrational but indelible way; (3) the time needed
to develop the evidence; and (4) the force of the proponent’s need for the
evidence.  See Mozon v. State, 991 S.W.2d 841, 847 n.7 (Tex. Crim. App.
1999) (discussing factors trial court is to consider when determining whether
the probative value of extraneous offense evidence outweighs a claim of
prejudice).  Cf. Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App.
2004) (discussing factors to determine whether photographs are more prejudicial
than probative).

Falade
argues that the State introduced the objected-to photographs solely to show his
propensity to commit crimes or bad acts.  Thus, Falade contends, the probative
value of the evidence was substantially outweighed by its prejudicial and
inflammatory nature.  See Tex. R. Evid. 403.  But to carry its burden of
proving Falade’s participation in a criminal street gang, the State was
required to show that Falade and his companions “continuously or regularly
associate in the commission of criminal activities.”  Tex. Penal Code Ann. § 71.01(d). 
Thus, some evidence of extraneous offenses would be relevant and, indeed,
essential to meet the State’s burden of proof.  See Hernandez v. State,
52 S.W.3d 268, 278 (Tex. App.—Corpus Christi 2001, no pet.) (reasoning that the
admissibility of extraneous activity is necessary to prove that defendant was a
member of a criminal street gang); see also Roy v. State, 997 S.W.2d
863, 867 (Tex. App.—Fort Worth 1999, pet. ref’d) (stating that when a defendant
is charged with engaging in organized criminal activity under section 71.02 of
the penal code, the State is entitled to introduce evidence that the defendant
was a gang member and regularly engaged in criminal activities such as the
illegal sale and distribution of drugs).

The
photographs in question, along with other photographs displaying Falade with
other alleged gang members flashing gang signs, were both relevant and highly
probative that Falade and his companions engaged in violent crimes as members
of a gang.[2]  This series of
photographs allowed the State to provide compelling evidence that made Falade’s
alleged involvement as a member of a criminal street gang more probable than if
the photographs had not been introduced.  The photographs are not of a nature
that they have the potential to impress the jury in an irrational but indelible
way.  And given that the State bore the burden to prove Falade’s involvement in
a street gang, the force of the photographs was necessary to establish this
requirement.  See Chaddock v. State, 203 S.W.3d 916, 923 (Tex. App.—Dallas
2006, no pet.) (holding that evidence of a prior assault committed by defendant
was relevant to show he engaged in criminal activity and was not offered solely
to prove character conformity).  We conclude and hold that the trial court’s
determination to admit into evidence the objected-to photographs does not lie
outside the zone of reasonable disagreement.  See Montgomery, 810 S.W.2d
at 391.  Thus, we overrule Falade’s first issue.

B.      Self-serving
Statement

In
his second issue, Falade contends that the trial court erred by not allowing
him to elicit testimony from Parks that as he was being handcuffed, Falade said
to Allred, “They made me do it.”  Falade’s contention is that his statement was
a res gestae statement which should have been admitted as evidence that he
committed the robbery under duress.  The State argues that the statement is a
classic self-serving hearsay statement and that the trial court correctly
excluded its admission.

The
determination of admissibility of evidence is within the trial court’s sound
discretion and will not be reversed on appeal absent a clear abuse of
discretion.  See Coffin v. State, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994);
Gaitan v. State, 905 S.W.2d 703, 708 (Tex. App.—Houston [14th Dist.]
1995, pet. ref’d).

Hearsay
is defined by the rules of evidence as “a statement, other than one made by the
declarant while testifying at the trial or hearing, offered in evidence to
prove the truth of the matter asserted.”  Tex. R. Evid. 801(d).  “Matter
asserted” includes “any matter explicitly asserted, and any matter implied by a
statement, if the probative value of the statement as offered flows from declarant’s
belief as to the matter.”  Tex. R. Evid. 801(c).

It
is the rule in Texas that self-serving declarations are not admissible in
evidence as proof of the facts asserted.  See Hafdahl v. State, 805
S.W.2d 396, 402 (Tex. Crim. App. 1990), cert. denied, 500 U.S. 948
(1991); Crane v. State, 786 S.W.2d 338, 353–54 (Tex. Crim. App. 1990); Allridge
v. State, 762 S.W.2d 146, 152 (Tex. Crim. App. 1988), cert. denied,
489 U.S. 1040 (1989); Chambers v. State, 905 S.W.2d 328, 330 (Tex. App.—Fort
Worth 1995, no pet.); State v. Morales, 844 S.W.2d 885, 891–92 (Tex. App.—Austin
1992, no pet.).  There are, however, limited exceptions to this general rule that
permit introduction of such proof.  The exception at issue in this case is
whether Falade’s self-serving declaration was part of the res gestae of
the offense or arrest.  See Allridge, 762 S.W.2d at 152; Singletary
v. State, 509 S.W.2d 572, 576–77 (Tex. Crim. App. 1974).

One
of the factors for determining a res gestae statement in Texas is
“spontaneity.”  See Allridge, 762 S.W.2d at 152; Rubenstein v. State,
407 S.W.2d 793, 795 (Tex. Crim. App. 1966).  This principle was explained long
ago as follows:

For a statement to be
a part of the res gestae, the declaration must deal substantially with,
and must grow out of, the main fact so as to be spontaneous and not, in any
event, a narration of a past event or occurrence.  Above everything else, there
must exist that spontaneity which takes the statement out of the realm of
narration or premeditation.

See
Allridge, 762 S.W.2d at 152 (quoting Trammell v. State,
145 Tex. Crim. 224, 167 S.W.2d 171, 174 (Tex. Crim. App. 1942)).  In Singletary,
the Texas Court of Criminal Appeals elaborated on this standard, noting:  “These
principles embrace such factors as time elapsed, and, more importantly,
spontaneity, or whether the statement was instinctive.”  509 S.W.2d at 577; see
also Fisk v. State, 432 S.W.2d 912, 914–15 (Tex. Crim. App. 1968).  And it
is well established that the statements must be generated by an excited feeling
that extended without break or let-down from the moment of the event they
illustrate.  Hamilton v. State, 138 Tex. Crim. 205, 209, 135 S.W.2d 476,
478 (1940).

After
carefully examining the record before us, we hold that there is nothing in this
record to establish that the trial court abused its discretion by excluding the
complained-of statement.  During Falade’s bill of exception, Parks testified
that it was during “handcuffing procedures” that Falade made the alleged
statement.  Parks said that while he was unsure of the exact timing of Falade’s
statement, he “assumed” it was made more than two minutes after Falade had been
apprehended.  Parks also stated that the statement was made at a time when the
tension of the arrest had “cease[d].”  Under this record, we cannot say whether
the “spontaneity” of Falade’s statements existed to take such statements “out
of the realm of narration or premeditation.”  See Allridge, 762 S.W.2d
at 152.  Therefore, we hold that the trial court did not abuse its discretion
by excluding Falade’s self-serving statements.  We overrule Falade’s second
issue.

C.      Vacillating Veniremember

In his third issue, Falade contends that the
trial court erred by denying his challenge for cause to veniremember 37. 
Pointing out that veniremember 37 at one time said that she could not consider
the full statutory range of punishment but later stated that she could consider
the evidence before determining what punishment within the statutory range was
appropriate, Falade asks this court to hold that veniremember 37 “gave the
answers that she thought the person questioning her wanted to hear, and that
she did so with an incomplete appreciation for the issue she was being
questioned about.”  The State retorts that veniremember 37 was a classic
vacillating veniremember and that the trial court did not abuse its discretion
by denying Falade’s challenge for cause.

In
the case of a vacillating veniremember, we defer to the decision of the trial
court, which was in a position to actually see and hear the veniremember in the
context of the voir dire.  Granados v. State, 85 S.W.3d 217, 232–33
(Tex. Crim. App. 2002), cert. denied, 538 U.S. 927 (2003).  Such a
ruling will not be disturbed unless there is no adequate basis in the record to
support the ruling.  Vuong v. State, 830 S.W.2d 929, 944 (Tex. Crim.
App.), cert. denied, 506 U.S. 997 (1992).  Elements such as demeanor and
tone of voice, among other things, are important factors in conveying the
precise message intended by the veniremember.  Mooney v. State, 817
S.W.2d 693, 701 (Tex. Crim. App. 1991).

Here,
veniremember 37 initially indicated that she could not consider the low range
of punishment, but she later stated that she was going to wait and hear the
evidence before deciding what punishment would be appropriate within the
statutory range.  In light of veniremember 37’s apparently contradictory
statements, we defer to the trial judge, who was best positioned to evaluate
her demeanor and voir dire as a whole.  See Threadgill v. State,
146 S.W.3d 654, 669 (Tex. Crim. App. 2004).  Therefore, we overrule Falade’s
third issue.

IV.  Conclusion

Having
overruled all three of Falade’s issues, we affirm the trial court’s judgments.

 

 

BILL MEIER

JUSTICE

 

PANEL: 
GARDNER,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  December 1, 2011









[1]See Tex. R. App. P. 47.4.





[2]Falade testified in his
own defense.  During questioning, Falade admitted that he was a gang member and
also testified to the contents of many of the pictures that the State admitted
into evidence.  Falade’s testimony regarding a number of these pictures was
that he was in a gang at the time the photos were taken and that the photos
depicted his membership in that gang.